FALLS v. DAILY, *Appellant.*

**Pleading**: PETITION: VERDICT: JEOFAILS. In a suit upon contract for a balance claimed to be due plaintiff for his commissions upon the purchase of hogs for the defendant, moneys expended in such purchase and expenses incurred in keeping and driving such hogs, there was a verdict and judgment for plaintiff for $500. It was evident from the record that all the issues were found for defendant except in regard to a $500 draft, for which plaintiff claimed credit. The petition did not state, and the evidence did not disclose, any facts showing defendant's liability on account of the draft. *Held,* that the petition was defective by reason of the failure to make such statement, and that the verdict did not cure the omission.

*Appeal from Nodaway Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*C. F. Booher* and *Strong & Mosman* for appellant.

*Heren & Son* and *W. W. Caldwell* for respondent.

HENRY, J.—This is a suit on a contract, by which plaintiff agreed to purchase hogs in Iowa, (not exceeding 10,000,) at current market prices, for defendant, who was to pay him twenty-five cents per head commission, and all expenses incurred by plaintiff in keeping said hogs and driving them from the place of purchase to the town of Lenox. Stating the contract, the petition avers, that in November and December, 1874, and in January and February, 1875, plaintiff purchased and delivered to defendant 797 hogs, which cost $11,591.90, at current prices, and that he expended $116 in caring for and delivering them at Lenox, and that his commission amounted to $199.25. Making a total of $11,907.15. It then alleges that plaintiff received from defendant drafts on Fisher & Daily, as follows: November 16th, 1874, $2,000; November 20th, (about) $1,000; November 22nd, (about) $1,000; November 25th, 1874, cash by Hancock, $500; December 6th,

1874, (about) draft, $4,500; December 6th, 1874, draft, $2,500; December 22nd, 1874, (about) $1,200. Total, $14,-700. Claiming credit for an unpaid draft for $500, dated December 20th, 1874, leaving the balance received by plaintiff, $14,200, $3,863.11 of which plaintiff paid to Fisher & Daily, and the residue, $10,339.89 was to be applied on the contract between plaintiff and defendant; claims that defendant is indebted to him in the sum of $1,570.26, and asks judgment for same and interest. Defendant, by his answer, admits a contract for the purchase of hogs, but denies that plaintiff's petition states it correctly, but does not indicate wherein—denies that plaintiff purchased and delivered 797 hogs, or exceeding 734, and that the hogs purchased cost $11,591.90—alleges that plaintiff delivered 734, and claimed and received pay for 746, and all expenses, and that there was a full and final settlement of the account between them, after the delivery of the last lot, and that defendant paid him what was then agreed upon as the balance. There was a verdict and judgment for plaintiff for $500, from which defendant appealed.

It is evident from the record, that all the issues made by the pleadings were found for defendant, except in regard to the $500 draft, for which plaintiff claimed a credit. On the face of the petition, it is impossible to discover on what ground that claim is made. He charges himself with six drafts and $500 cash, aggregating $14,700, neither of which drafts embraces the $500 draft in question, and nothing is alleged to show any connection of defendant with or liability for it. The evidence does not clearly show upon what ground the plaintiff places the demand. He says that on the 8th day of December, 1874, he drew through the bank of Mt. Ayr, on Fisher & Daily, for collection at Bedford bank, two drafts, one for $2,000, and the other for $1,000, but meeting the defendant, it was agreed that $2,500 would answer plaintiff's purpose and the upon defendant placed to plaintiff's credit in the Mt. Ayr bank $2,500, and drew a draft on plaintiff for $500, and afterward the cashier of

the Mt. Ayr bank delivered to plaintiff a certificate of deposit for $2,500 and the $500 draft drawn on him; that he paid nothing for the draft at the time; that plaintiff then credited defendant with $2,500. Again he says: "I was not charged by Mr. Dunning with the $500. I deposited the currency with him and he delivered me the draft sued on." Dunning was the cashier of the Mt. Ayr bank, and the $500 draft drawn on plaintiff was payable to Dunning. Again he says: "I can't point out in my petition, nor in my account, where I charged myself with the $500 draft; I paid nothing for it to anybody." The defendant testified in relation to that transaction, as follows: "At my request he (plaintiff) agreed that $2,500 would do him. I went to the Bedford bank the same day, and sent through the bank $2,500, and the $500 draft shown here. The bank charged me $2,500, and I charged the same sum only to plaintiff. I never received from him, or any one, a cent on account of that draft. The draft and currency offset his drafts on me for $3,000, and that was all there was of it." Under the instructions given by the court, the jury were authorized to find for plaintiff on account of this draft. If the plaintiff had any cause of action on account of that draft, and the jury found that he had no other, it should have been stated. Facts should have been alleged showing defendant's liability; and if a verdict would cure the omission of such facts, the evidence should justify the verdict, but it does not. So far from showing a liability on the part of defendant, plaintiff's own evidence exonerates the defendant from any obligation to him on that account. The judgment is reversed and the cause remanded. All ecncur.