BLODGETT, *Appellant,* v. PERRY.

1. **Execution, When Returnable:** STATUTE. Under Revised Statutes, 1879, section 2338, an execution may issue returnable, at the option of the plaintiff, either to the first or second term after such issuance.

2. ——— : OFFICER : PRESUMPTION. In the absence of aught to the contrary, it will be presumed that the clerk who issued, and the sheriff who sold under an execution obeyed the dictates of duty and complied with the law.

3. **Estoppel in Pais.** To constitute an estoppel *in pais,* there must have been a false representation or a concealment of material facts, made with knowledge of such facts, to one who was ignorant of the truth of the matter, with the intention that he should act upon it and that he was induced to do so.

4. ———. Mere silence or some act done, where the means of knowledge are equally open to both parties, will not estop the party doing the act or remaining silent.

5. ———. There must be a certainty about an alleged estoppel ; the misrepresentation must be plain, not doubtful or matter of mere inference or opinion.

6. ——— : CASE ADJUDGED. Where one is advised by his counsel that a bank, at whose instance a sale of land is being made, would be estopped from asserting title under any former deed to the latter, and relying upon the advice of his counsel and not upon the act of the bank in having the sale made, buys thereat, the bank is not estopped from claiming title to the land sold.

7. ——— : ATTORNEY. Where an attorney's name is signed to a petition merely as an accommodation to counsel for plaintiff, such attorney is not estopped from disputing the title to land sold under an execution issued on the judgment in said suit.

8. **Notice:** PRACTICE : SHERIFF'S DEED. Where one purchases land at a sheriff's sale, taking no deed therefor, and fifteen years later, his assignee institutes a proceeding against the sheriff to compel the sheriff to execute a deed to him, such proceedings are, as to one who has no notice of them, void.

Blodgett v. Perry.

9. **Sheriff's Sale :** DEED.  No title to land sold at a sheriff's sale passes except upon delivery of the deed.

10. ―――― : ―――― : ADMINISTRATION.  Where a decedent purchased land at a sheriff's sale and took no deed therefor, he had no such interest in the premises as could be the subject of administrator's sale.

11. **Equitable Estoppel :** STRANGER TO TITLE.  A stranger to the title to real estate cannot invoke an equitable estoppel against a plaintiff in an ejectment suit.

12. **Presumption.**  When one buys land at a sheriff's sale and fourteen years pass without a deed being taken therefor, it may well be concluded that he and those claiming under him have abandoned all claim to said land.

*Error to Johnson Circuit Court.*—HON. N. M. GIVAN, Judge.

REVERSED.

THE petition in this case, an action of ejectment, was in the usual form. In his answer defendant admitted his possession of the property, but denied all other allegations of the petition.  The defendant then as an equitable defense set up the following new matter :

"For further answer to said petition, defendant says that both parties to this action claim title through and under one Amos M. Perry, who was formerly the owner in fee of the real estate in controversy;  that heretofore, to-wit, on the twenty-sixth day of July, 1870, the Union Bank of Missouri commenced an action by attachment against said Amos M. Perry, in the court of common pleas in and for the county aforesaid ; that the writ of attachment in said cause was duly levied on the lands in controversy, and notice by publication duly given to said defendant, and at the September term, 1870, of said court a special judgment, in favor of said bank, and against said land as the property of said Amos M. Perry, was duly rendered ; that on the twenty-sixth

day of November, 1870, a special execution was issued upon said judgment and levied upon the real estate in controversy, and after due advertisement, during the December term, 1870, of said court, while said court was in session, said real estate was exposed to sale and sold to the highest bidder for cash, in all respects in accordance with the law; that at said sale said bank was a bidder for said land; that at said sale one Wm. D. Shumate, being the highest, best and last bidder, became the purchaser of the real estate in controversy; that the plaintiff herein was the attorney for the Union Bank aforesaid in its action against said Perry from its inception to its termination; that the defendant holds under said Shumate, and has acquired by proper conveyances all the title of said Shumate in said land; that the sheriff who made the said sale thereafter executed a deed in due form to this defendant as the assignee of the rights of said Shumate in said land; that the plaintiff now claims to own said real estate by conveyance from said Union Bank, dated long after said sale to said Shumate; that said plaintiff claims that said bank had purchased said real estate of said Amos M. Perry and was the owner thereof prior to the aforesaid sale to Wm. D. Shumate; that at the sale under the execution aforesaid, said Shumate, relying upon the acts of said bank in attaching, advertising and selling under execution the real estate in controversy, as the property of Amos M. Perry, as a declaration, admission and assertion of said bank that it was not the owner of said real estate and that said Amos Perry was the owner thereof, purchased the same and paid therefor a valuable consideration; and this defendant, his assignee, has received in due form from the sheriff who sold the same a deed conveying said land to him; that said Blodgett purchased of said bank with full knowledge of all the foregoing facts; that said bank was estopped, debarred and precluded from asserting any title to said real estate,

acquired from said Amos M. Perry by said bank, prior to said sale to said Wm. D. Shumate."

Defendant offered in evidence the following order made by the Johnson circuit court on October 23, 1885:

"Now at this day this motion coming on for hearing is taken up and submitted to the court; and it appearing that due notice has been given to the defendant, the court finds that heretofore, to-wit, on the twenty-second day of December, 1870, and prior thereto, the defendant, Jehu H. Smith, was the duly qualified and acting sheriff of the county of Johnson, in the state of Missouri. That on said day, under and by virtue and authority of a special execution, duly issued to him out of the court of common pleas for said county on November 26, 1870, and received by him on November 28, 1870, under and by authority of and to execute a judgment rendered in said court on September 26, 1870, for $465.60 in favor of the Union Bank of Missouri against one Amos M. Perry, and made special as to the lands hereinafter described, said sheriff did, after due advertisement, expose to sale in accordance with law, and sell to William D. Shumate, the highest and best bidder for cash in hand, the following described real estate, situate in Johnson county, Missouri, to-wit: (describing it). The said sale was duly made at a regular term of court while said court was in session; that said Shumate bid for above and other tracts of land the sum of five hundred and four dollars, and paid said sum to said sheriff and received a certificate of purchase from him for said real estate. That this plaintiff has acquired all the rights of said Shumate of, in and to said real estate, by conveyance in due form and is now the owner and in possession of said real estate. It is therefore ordered by the court that the defendant, as such late sheriff, execute a proper deed to the said N. W. Perry for the aforesaid real estate, and that plaintiff pay the costs thereof."

Defendant introduced in evidence a deed from J. H. Smith, late sheriff, to the land in controversy, said deed having been made in pursuance of said order of the circuit court.

The defendant read in evidence the deposition of F. M. Cockrell:

"I have personally known plaintiff since the spring of the year 1866, and have often read his writing and seen him write, and know his handwriting. I have examined the petition, affidavit and bond, the attachment suit of the Union Bank of Missouri, plaintiff, against Amos M. Perry, defendant, in the Johnson court of common pleas, and find that the names 'Elliott and Blodgett & G. C. Land, attorneys for plaintiff,' signed to the petition are in the handwriting of Col. Wells H. Blodgett; and the name 'Wells H. Blodgett' signed to the affidavit attached to said petition is in the handwriting of said Blodgett, and the name, 'Wells H. Blodgett,' signed to the bond in said suit is in the handwriting of said Blodgett. At that time, July, 1870, said Blodgett and I both resided in Warrensburg, Mo., and were practicing law in the same courts. I was present on or about December 22, 1870, when the lands of the defendant, A. M. Perry, as attached in said suit, were sold by J. H. Smith, then the sheriff of Johnson county, Mo., under the execution of *fieri facias* issued in said cause, and saw Mr. William Shumate, who became the purchaser at said sale, and Mr. G. C. Land and Col. Wells H. Blodgett and was conferring with Mr. Shumate before and while he was bidding on said land against Mr. G. C. Land. After several bids had been made, Mr. Land conferring with Mr. Shumate, and I also conferring with Mr. Shumate, and Mr. Land then consulted Col. Blodgett, who was either standing near or in the court room, and it was agreed that Mr. Shumate should bid the amounts of the judgments, interests and costs, and should become the purchaser of the lands being

sold at that amount, and Mr. Shumate thereupon bid amounts sufficient to make in the aggregate the judgments, interests and costs, and became the purchaser thereof. Mr. Shumate was acting under my advice, which was, that his purchase under that execution would be good, and that the sale of the lands of A. M. Perry by the bank under that execution would bar and estop the bank from asserting title under any former sale and purchase by such bank. Mr. Shumate died about January, 1875."

The deposition of plaintiff was read in evidence, wherein he stated as follows: "In the year 1870, I resided at Warrensburg, Mo., and was practicing law there. I was in partnership with G. N. Elliott, and the style of our firm was Elliott & Blodgett. We had no other partner. Garrett C. Land, at that time a young attorney, since deceased, had a desk in our office, and was at that time attorney for Union Bank of Missouri and had its business under his charge and control. He brought and carried through the suit under which it is claimed Shumate purchased. All of the body of all the papers in the judgment roll are in his handwriting. I signed the papers to which my signature appears for his accommodation. I have read over Gen. F. M. Cockrell's deposition and I have no recollection of being present at the sale to which he testifies, or making any agreement whatever as testified to by him."

*H. S. Priest* and *S. P. Sparks* for appellant.

( 1 ) The sheriff's deed of October 20, 1866, conveyed to the Union Bank of Missouri all the title of Amos M. Perry. On its face the deed is a perfect instrument, and no evidence of any sort was offered by defendant to impeach it. The deed contains every recital required by statute. The execution was special and was a lien on the lands without any formal levy,

and it does not appear that the sale was made after its return day. Executions may be made returnable at the second as well as at the first term of court succeeding their issue. 1 Wag. Stat. sec. 4, p. 602. Again, the execution being special, and being a lien upon the property decribed therein without a formal levy, if for any cause a sale was not made at the first term of court, the execution, and, in case of a levy, the lien of such levy remained in force until the end of the second term, and until a term of court was held at which the real estate might be sold. 1 Wag. Stat. sec. 51, p. 611. If a sale is not made at the first term of court two things are continued in force by the plain letter of the statute : First, the execution is continued in force, and second, the lien of the levy, if one has been made by the sheriff, is also continued in force. But if an execution is special, no levy is required, and it is only necessary to continue the execution in force in order to authorize a sale at the second, or some subsequent, term of court. *Hicks v. Ellis*, 65 Mo. 187 ; *Stewart v. Severance*, 43 Mo. 331. ( 2 ) The conduct of the bank in causing execution to issue on its second judgment, and in offering for sale under it all the right, title and interest of Amos M. Perry in the lands, did not amount to a representation by the bank that A. M. Perry was, at the time, seized of any interest or estate in the lands, and hence neither the bank, nor those claiming under it, are estopped from asserting title under the sheriff's deed of 1866, which was of record when Shumate purchased in 1870. *Martin v. Zellerbach*, 38 Cal. 300. The rule of *caveat emptor* applies to all execution sales in this state. There is no warranty of either soundness or title. *Hensley v. Baker*, 10 Mo. 157. ; *Cravens v. Crystie*, 53 Mo. 287 ; Rorer on Judicial Sales, 165, and cases cited. (3) The bank was not estopped, because its deed was of record when Shumate bought, and it made no statements or representations at the time of the sale, calculated to deceive Shumate, or induce him to buy, but on

the contrary, the evidence shows that when Shumate purchased he was fully informed of all the facts, and relied solely on his own judgment and the opinion of his attorney. *Bales v. Perry*, 51 Mo 453; *Eitelgeorge v. Building Ass'n*, 69 Mo. 52; *Spurlock v. Sproule*, 72 Mo. 505; *Acton v. Dooley*, 74 Mo. 67. (4) Even if the two propositions last above stated are unsound, the defendant was in no position to invoke an equitable estoppel against the plaintiff, as to the whole title, because he showed no privity of estate as to the whole. (5) The defendant was in no position to invoke an equitable estoppel, because of laches on the part of himself and those through whom he claims. (6) The order of the circuit court made in 1885, directing the late sheriff to make a deed to defendant, as assignee of Shumate, was void as to Blodgett, because it was made in a proceeding to which neither he, nor those through whom he claims, were parties.

*Cockrell & Suddath* for respondent.

(1) After a sheriff has made a levy and sale, and gone out of office before executing a deed to the purchaser, such late sheriff still has authority to make the deed. R. S. sec. 2398; *Porter v. Mariner*, 50 Mo. 364. (2) If a party having once ʿexposed for sale under execution the lands of an execution debtor, and purchased them at such sale, and afterwards issues execution upon another judgment, and sells the lands again as the lands of the same execution debtor, and at the last sale a third party purchases, the execution creditor is estopped from asserting title under said first sale against the purchaser under the second. *Gilkeson v. Knight*, 71 Mo. 403; *State v. Milk*, 11 Bissell, 197; *Rice v. Bunce*, 49 Mo. 231; *Hart v. Giles*, 67 Mo. 175; *Peery v. Hall*, 75 Mo. 503; *Moore v. Bowman*, 47 N. H. 494; *Amonett v. Young*, 14 La. 175; *Smith v. Taylor*, 14 La. 663; *Berhn v. Gilley*, 13 La. 461. (3) Sale of real estate under execution, where levy is made after return day, is void.

*Bank v. Bray*, 37 Mo. 194; Freeman on Executions, 106. (4) Sale under execution that may have expired is void. *Wack v. Stevenson*, 54 Mo. 485. (5) It is only where a levy is made before return day that a sale can be made afterwards. R. S. 1879, secs. 455, 2389. (6) The deed must show that the sheriff acted under a writ in force at the time of the sale, and recite on its face a compliance with the law; and unless it does so it will be void. *Lackey v. Lubke*, 36 Mo. loc. cit. p. 124; *Tanner v. Stine*, 18 Mo. 580; R. S., 1879, sec. 2392; *Julian v. Boren*, 55 Mo. 110; *Wilhite v. Wilhite*, 53 Mo. 71; *Carpenter v. King*, 42 Mo. 219.

SHERWOOD, J.—Ejectment for certain land in Johnson county. Both parties claim title under Amos M. Perry, the former owner. Action brought January 22, 1885.

I. The agreed statement of facts shows that the Union Bank of Missouri was the creditor of Amos M. Perry, and the purchaser of his interest at execution sale; that the Union National Bank of St. Louis is the successor of the former bank as to all rights and interests, etc. The plaintiff claims under a quit-claim deed made by the latter bank to him, October 22, 1884, and filed for record November 1, next thereafter.

The sheriff's deed to the Union Bank is dated October 20, 1866, and filed for record October 22, 1870. To this deed, objection is made that it shows that the special execution therein mentioned was issued September 5, 1865, delivered to the sheriff on the fifteenth of that month; but that no sale thereunder occurred till April 17, 1866, long after the return day of the writ, and that, therefore, the sale was void. To this objection, it may be replied that under the law as it then stood and now is, executions might have issued, and may issue, returnable at the option of the plaintiff, either to the first or the second term after such issuance. R. S. 1879, sec.

2338. And in the absence of aught to the contrary, it will be presumed that the clerk who issued, and the sheriff who sold under the execution obeyed the dictates of duty and complied with the law. The indulgence of such presumption is of common occurrence, and of daily recognition in the courts. *Long v. Joplin M. & S. Co.*, 68 Mo. 422, and cas. cit.; *Addis v. Graham*, 88 Mo. 197; *Hammond v. Gordon*, 93 Mo. 223.

II. Now as to the plea of estoppel *in pais* or equitable estoppel as set forth in the answer: The gist of the plea is that plaintiff was the attorney for the Union Bank in the attachment suit instituted by the bank against Amos M. Perry in 1870; that defendant claims under one Shumate, and has acquired all of Shumate's rights in the premises by proper conveyances; that Shumate, under the sale made by virtue of the attachment proceedings aforesaid, bought the premises in controversy, *relying upon the acts of the bank in attaching and selling under execution said property*, as that of Amos M. Perry, *as a declaration and admission* of the bank that *it was not*, and Amos M. Perry *was*, the owner of said real estate, purchased the same, and paid therefor; and this defendant, as his assignee, has received a deed from the sheriff for said land; and that plaintiff had acquired his deed with notice, etc. This plea is plainly bad on its face. It does not contain within its allegations a single element of estoppel. It is not alleged that Shumate was misled by any act of the Union Bank or of plaintiff, or that he was in ignorance of the true state of the title, or that the former deed to the Union Bank was not put to record, or that the act of the Union Bank induced Shumate to buy the land which otherwise he would not have bought.

An eminent text-writer, treating of the subject of equitable estoppel, says: "The cases when carefully analyzed show that all of the following elements must

actually or presumably be present in order to an estoppel by conduct: 1. There must have been a false representation or a concealment of *material* facts. 2. The representation must have been made with *knowledge* of the facts. 3. The party to whom it was made must have been *ignorant* of the truth of the matter. 4. It must have been made with the *intention* that the other party should act upon it. 5. The other party must have been *induced to act upon it.*" Bigelow on Est. [3 Ed.] 484.

In *Dezell v. Odell*, 3 Hill, 215, Cowen, J., says: "We then have a very clear case of an admission by the defendant intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This I understand to be the very definition of an *estoppel in pais.*"

Nor will mere silence, or some act done, where the means of knowledge are equally open to both parties, estop the party doing the act or remaining silent. Thus in *Brinckerhoff v. Lansing*, 4 Johns. Ch. 64, Lansing was a mortgagee, whose mortgage was duly recorded, and he witnessed a lease made by his mortgagor of a part of the mortgaged premises, and it was ruled by Chancellor Kent that no estoppel arose, by reason of the fact of the registry of the mortgage, the lessee being charged with constructive notice of it. Similar rulings have been made elsewhere. *Odlin v. Gove*, 41 N. H. 465; *Carter v. Champion*, 8 Conn. 554; *Bigelow v. Topliff*, 25 Vt. 273. The same doctrine has been recognized by this court. *Bales v. Perry*, 52 Mo. 449, and cas. cit.; *Acton v. Dooley*, 74 Mo. 74, and cas. cit. Furthermore, there must be a *certainty* about the alleged estoppel; the misrepresentation must be plain, not doubtful or matter of mere inference or opinion; for the courts will not suffer a man to be deprived of his

property or security where he had no intention to part with it. It is much the same thing to say that the representation or conduct is such as would naturally lead to the action taken; that is, it should be such as to justify a prudent man to act upon it. Bigelow on Est. [3 Ed.] 490, 491. Tested by these authorities, and the rule they enunciate, the plea was wholly worthless.

III. And the evidence to support the plea of estoppel is of a piece with it, since it is clear that Shumate was acting under and relying *not on the act of the bank in having the sale made, but upon the advice of his counsel, F. M. Cockrell*, that his purchase under the second execution would be good, as the sale made thereunder would bar and estop the bank from asserting title under any former deed to the latter.

IV. Nor is it seen that the case of the defendant is strengthened by the fact that the plaintiff's name is marked to the petition as counsel with Elliot and Land, since his uncontradicted testimony shows that he was *not* counsel for the bank, that Land was, and that plaintiff's name was signed merely as an accommodation to Land. Something has been said about plaintiff's *agreeing* to the sale in question; but there is not a *scintilla* of evidence tending to show this to be true, granting it to be material. That he was present at or near the sale is indeed testified to; that he was seen to converse with Land is also testified to; but that he *agreed to the sale*, or the terms upon which Shumate bought, no one swears.

V. Shumate died in 1875. Prior to his death, however, and prior to the execution sale to him, to-wit, December 19, 1870, Amos M. Perry had conveyed, by quit-claim to the defendant, the premises in dispute. No deed was ever made to Shumate for the premises. About nine months *after the present action was begun*, however, and some *fifteen years after Shumate's death*, the defendant instituted in the Johnson circuit court a

decidedly unique proceeding, a proceeding wherein the said defendant appears as plaintiff, and the former sheriff as *defendant*, and wherein it is gravely recited that "*due notice*" *of the motion was given to the defendant, i. e., to the former sheriff!* Whereupon, after numerous recitals of facts, it was ordered by the court that said former sheriff execute a deed to the present defendant as *assignee* of Shumate. Of this proceeding, one without notice to plaintiff, a purely *ex-parte* proceeding, it is scarcely necessary to say more than that there yet remains in this country a certain instrument commonly called a constitution, which forbids a man to be passed upon either in person, or estate, without an opportunity to be heard. The deed, therefore, though made under the order of the court, passed no title to defendant as against plaintiff, and was as to him utterly worthless, saying nothing about the great laches exhibited. by defendant, and those under whom he claims, in coming forward and asserting any right which it may be supposed was acquired by Shumate at the sheriff's sale ; as to which point, see *Hoge v. Hubb*, 94 Mo. 489.

VI. Furthermore, as no title to lands sold at sheriff's sale passes except upon delivery of the deed (*Leach v. Koenig*, 55 Mo. 451 ), *Shumate had no such interest in the premises as could be the subject of administrator's sale*, and consequently Crittenden and Cockrell took nothing by their purchase, and of course could transfer nothing to the defendant. And the deed of the former sheriff to the defendant was, as already seen, invalid as to the plaintiff. So that the defendant occupies the attitude of a *stranger to the title* attempting to invoke against the plaintiff an equitable estoppel ; something which cannot be done.

VII. Moreover, the plaintiff bought of the successor of the Union Bank the premises in question, about fourteen years after Shumate had bid in the land,

but had failed to take a deed. From the great lapse of time without a deed having been taken, plaintiff might well conclude that Shumate and those claiming under him had abandoned all claim to the premises in litigation.

It follows from what has been said that a peremptory declaration of law in favor of plaintiff, as asked, should have been given. The judgment is reversed and judgment will be entered in this court for plaintiff. All concur, except BARCLAY, J., not sitting.