[Civil No. 391.   Filed December 23, 1895.]

[42 Pac. 949.]

## MARY J. SMITH, Plaintiff and Appellant, v. J. K. BROWN, Defendant and Appellee.

1. ESTOPPEL — EXEMPTION — PARTNERSHIP — EVIDENCE.—Evidence that the business of plaintiff, a married woman, and the head of a family, was conducted under the name of Mrs. M. J. Smith & Co.; that a son about twenty-one years of age worked in her store; that in conversation with creditors in purchasing goods, they used the plural pronoun "we"; also directed the goods shipped "to M. J. Smith & Co."; also that the son stated to one of them: "We wish you to ship the goods immediately. We want them as soon as possible"; also that one of the creditors asked plaintiff the question, "Who are your partners?" and she answered, "My creditors are my partners"; and the question, "Why do you do business in that name?" to which she answered, in effect, "That is my business," is insufficient to estop plaintiff from proving the business was not that of a partnership and claiming her rights of exemption.

   BAKER, C. J., dissenting.

2. SAME—PARTNERSHIP—BELIEF INDUCED BY REPRESENTATIONS.—Unless the creditors thought they were dealing with a partnership, and were induced to so believe by the conduct of plaintiff, and that plaintiff's said action was for the purpose of inducing them to

believe that as a fact, plaintiff is not estopped to claim the business as her sole property.

3. SAME—REGARDED WITH DISFAVOR.—The law does not favor estoppels, because they operate to shut out the truth and prevent parties from asserting or defending their rights by proof of actual existing facts.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. R. E. Sloan, Judge. Reversed.

The facts are stated in the opinion.

Charles Weston Wright, for Appellant.

"The law does not favor estoppels, because they operate to shut out the truth and prevent parties from asserting or defending their rights by proof of actual existing facts. They are therefore confined within very narrow limits, and are always required to be strictly made out." *Plummer* v. *Lord,* 9 Allen, 458; *Andrews* v. *Lyons,* 11 Allen, 349.

"Where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." Bigelow on Estoppel, p. 560.

To bring a case within this rule it must contain all the essentials of the rule; and these are: 1. By act or word one must willfully cause another to believe; 2. One must induce another to act on such belief; and 3. In so acting one must alter his previous position to his disadvantage. .

The word *willfully* is not used in the sense of *malo animo,* or with intent to defraud or deceive, "but so far willfully that the party making the representation on which the other acts means it to be acted on in that way." Bigelow on Estoppel, p. 640, n. 3.

No presumption, either of fact or of law, can be harvested from the use of a firm name. Thousands of single individuals, as we all know, are doing business under firm names. *Robinson* v. *Magarity,* 28 Ill. 426.

Why did not these sellers ask the question whether there was a partnership or not? Why did they not ask, if there was one, who composed it? By virtue of what did they

assume, if they did assume, that there was a copartnership, when this thought, at the time of the sale, was not in the minds of either? Was it permissible for them to assume, in the absence of any express representation of the fact, when the law required a public record of the fact, if it was a fact, and this they could have consulted? Rev. Stats., par. 2403; *Kingman* v. *Graham*, 51 Wis. 245, 8 N. W. 181; *Brant* v. *V. C. and I. Co.*, 93 U. S. 334; *Burges* v. *Seligman*, 107 U. S. 28, 2 Sup. Ct. Rep. 10; *David* v. *Park*, 103 Mass. 502.

Maxwell & Satterwhite, for Appellee.

ROUSE, J.—This is an action by plaintiff against defendant for damages for personal property of plaintiff seized and carried away by defendant. The complaint is as follows: "(2) That plaintiff was during all the times hereinafter stated, and now is, the member and head of a family, residing in said county. That the task of supporting and providing for said family devolved upon plaintiff during all of said times, and to that end and for that purpose, during all of said times, she carried on, under the name and style of Mrs. Mary J. Smith & Co., the business of buying, selling, repairing, and making household goods. That she was the sole owner of said business, of said goods, and each and all thereof, that she kept in stock and for sale. And that she alone had sole control and management of said goods, and of the management of said business. (3) That the total value of said goods, together with all other personal property, and all other kinds of property, owned by her during all of said times, was of the value of less than one thousand dollars. (4) That during the time she was transacting said business, and the time hereinafter mentioned, to wit, during the months of May and July, 1891, defendant, acting as the sheriff of said county, levied on said goods and personal property by virtue of a certain execution then in his hands. That defendant did, while so acting as such sheriff, and claiming then and there to act by virtue and in pursuance of said execution, seize, take into his possession, carry away, and convert and sell the said goods of the plaintiff, to wit, certain household furniture, then and there being the sole property of the plaintiff, and then and there being of the value of five hun-

dred and sixty-eight dollars and ninety cents. (5) That at the time said seizure was made by defendant, as aforesaid, of said personal property, plaintiff was present, and notified defendant that the total value of all personal property then owned by her was less than one thousand dollars; that the same, and all thereof, was exempt from levy and forced sale; and that she claimed such exemption. That it was the duty of defendant, upon plaintiff claiming said property, and each and all thereof, exempt from levy and forced sale, and claiming her right of exemption, as the head of said family, as her personal right, to have appraised the value of said personal property with plaintiff, and, in the event of their failing to agree upon the value of said property, then and in that event to have summoned appraisers to value the same, and all thereof, and to designate the property that was exempt. But the defendant, not regarding his duty in that behalf, refused to join with plaintiff in the appraisement of said property, or any thereof, and refused to join with plaintiff in the appointment of appraisers to value said property, and to designate that which was exempt, as aforesaid, from levy and forced sale, and defendant, wholly disregarding the rights of plaintiff in that behalf, and against her wish and protest, seized said property, carried the same away, and sold it at public vendue, whereby said property and all thereof became and was wholly and forever lost to plaintiff. Wherefore plaintiff demands judgment. . . .'' Defendant pleaded a general denial, and the trial was had on the issues presented by said pleadings.

On the trial, the evidence tended to prove that plaintiff carried on business in Tucson, Pima County, Arizona, in the name of Mrs. M. J. Smith & Co.; that she was a sole trader, and filed her declaration as such in 1892; that she had a number of children, who lived with her, and were supported by her; that she had a son about twenty-one or twenty-two years old, who remained with her and worked in her store or place of business; that her business was that of dealing in new and second-hand household and kitchen furniture, and in repairing such goods; that all of her property, including the stock in hand, was of the value less than one thousand dollars; that, of said goods, defendant seized and carried away and sold $568.90; that at the time defendant seized the

said property he was sheriff of said county of Pima, and seized the said property as such; that at the time the property was seized plaintiff requested defendant to set off her said property as exempt from execution, and to do and perform the acts required by law to be done in that respect; and that defendant failed and refused to set off any other part of said property as exempt, and made no disposition of plaintiff's property under the provisions of the statute on exemptions.

In justification defendant offered in evidence two executions, issued by one W. H. Culver, a justice of the peace, on judgments rendered by him,—one in the case of Kostuba, and the other in favor of Conrads Chair Company. Both of said parties were doing business in St. Louis, Missouri, and said suits were against M. J. Smith & Co. The summons in each case, as we are advised, was against the said defendant, M. J. Smith & Co., and the returns did not show that they had been served on any individual. The said judgments were by default. Defendant was permitted to introduce evidence on the trial to show that the salesmen, commonly called "drummers," who represented said judgment creditors, and who sold the bills of goods to plaintiff which were the foundation for said suits, had conversations with plaintiff and one of her sons at the time they made said sales, in which conversations plaintiff and her said son made certain declarations which are claimed to be sufficient to estop plaintiff from claiming said goods to be her individual property, but which made it the property of a partnership. Without expressing an opinion from which it may be concluded that, under the answer in the case, such a defense can properly be made, we have to state that the evidence on that point only tends to show that in conversation with the representatives of said creditors, when the class of goods to be purchased was discussed by plaintiff and her said son, they used the plural pronoun "we"; also, that, when asked by one of said representatives how they wished the goods shipped, they answered, "To M. J. Smith & Co."; also, that the son stated to one of them on the street: "We wish you to ship the goods immediately. We want them as soon as possible." It was also given in evidence that one of said representatives asked plaintiff the question, "Who are your partners?" and she an-

swered, "My creditors are my partners"; and the question, "Why do you do business in that name?" to which she answered, in effect, "That is my business."

The essential elements of estoppel by conduct are: 1. There must have been a false representation or concealment of material facts; 2. The representation must be plain and certain; 3. The party relying on the representations must have been ignorant of the facts. The representation must have been made, or the concealment practiced, with the intention that' it should be acted upon. The other party must have been induced to act upon the representations or concealment. Bigelow on Estoppel, 5th ed., p. 570; *Burk* v. *Adams,* 80 Mo. 504, 50 Am. Rep. 510; *Gentry* v. *Gentry,* 122 Mo. 221, 26 S. W. 1090; *Monks* v. *Belden,* 80 Mo. 639; *Blodgett* v. *Perry,* 97 Mo. 274, 10 S. W. 891; Story's Equity Jurisprudence, sec. 191. We do not think the evidence sufficient to estop plaintiff from claiming her rights of exemption. The evidence discloses the fact that M. J. Smith, plaintiff's husband, had carried on a similar business in the same building, but had quit the place about six years before she bought said goods, and had been living all that time in a distant state, separate and apart from plaintiff, and contributed but little, if anything, for the support and maintenance of plaintiff's children, and nothing for her support. It also appears that the sign used by the husband was still over the door. We do not believe from the evidence in this case that the traveling salesmen believed at the time they sold the goods to plaintiff that they were selling to a partnership. Unless they thought they were dealing with a partnership, and were induced to believe that by the conduct of plaintiff, and that plaintiff's said action was for the purpose of inducing them to believe that as a fact, plaintiff is not estopped. *Gentry* v. *Gentry,* 122 Mo. 221, 26 S. W. 1090; *Blodgett* v. *Perry,* 97 Mo. 274, 10 S. W. 891; Bigelow on Estoppel, 3d ed., 490, 491. The law does not favor estoppels, because they operate to shut out the truth, and prevent parties from asserting or defending their rights by proof of actual existing facts. To estop plaintiff in this case is to make her a member of a partnership when no such partnership exists, is to take her individual property from her control, and subject it to the payment of the debts of a partnership, when no such partnership was in

existence, to deprive her of the law of exemptions, and thereby to rob her and her children of that which she is entitled to as a means of support.

There are other errors assigned by appellant, but we do not deem it necessary to consider them. The judgment of the district court is reversed, and the case remanded for a new trial.

Bethune, J., concurs.

Hawkins, J., concurs in the reversal.

BAKER, C. J.—I dissent. I protest against the ease and facility with which this court resolves itself into a trial court, and passes upon detached questions of fact, without having seen or heard the witnesses testify. The fact that the finding of the lower court is contrary to the judgment of this court, or this court, looking at the evidence as written, would come to a different conclusion from the trial court, or that the finding is apparently against the mere weight of the evidence, does not authorize a reversal of the judgment upon the ground that the evidence is insufficient to support it. If there be some substantial evidence upon which the finding may be lodged, the judgment must be sustained so far as any objection to the sufficiency or insufficiency of the evidence goes, and the reviewing tribunal will go no further than to ascertain if such testimony is in the case. These rules are formulated in many decisions. No questions of law are raised by the appeal, and the sole inquiry is one of fact,—viz., Did the plaintiff obtain credit in a manner which will estop her from denying the existence of a partnership styled M. J. Smith & Co.? Such a firm may in fact not have existed, but if she did business under a fictitious firm name, and in such name obtained credit, her property, as to the creditor and his rights and remedies, will be the same as if such firm did in fact exist, and was composed of two or more partners. *Rosenbaum* v. *Hayden*, 22 Neb. 744, 36 N. W. 147; 2 Hermann on Estoppel, 1230.

The following is the substance of the evidence: That the agents of the judgment-creditors sold the goods at the place of business occupied by the plaintiff and her son, a young man. They both ordered the goods; that is, they both participated in making the orders, the son being especially active in select-

ing and designating the goods to be purchased; the mother, being present, she was usually consulted, and concurred. The orders were sometimes written, but, whether written or verbal, they were always to the effect: "We want so and so." They were made in the name of M. J. Smith & Co., and the goods were shipped and received in that name by plaintiff and her son. The business was conducted under the name of M. J. Smith & Co. The son appeared to be the general manager. He had been engaged in and about conducting the business for several years with his mother. When approached for a settlement for the goods purchased, he claimed either that the business was his own or that he was a copartner in it. When the first levy was made, the plaintiff declared that she had nothing to do with the business; that it belonged entirely to her son. When asked why the goods were tagged M. J. Smith & Co., she said that was a secret, and she would not tell everybody her business. She was not a witness in this case, and has given no testimony. The business was rated in R. G. Dun's Commercial Agency under the name of M. J. Smith & Co. The agents declare that they believed the mother and son to be copartners from what they said and did, and they sold them the goods with that understanding, and that nothing was said to give them a different idea. Thus, it appears that plaintiff acted under a fictitious firm name, and bought the goods, and had them shipped to her, and received them, in such name. She failed to disclose the real facts, and received the benefits of the supposed partnership, since the testimony is, that the salesmen were induced to believe that the firm existed, and, upon the strength of that, sold her the goods. She is bound by her indirect representations arising from her conduct, as much as if she had stated to the creditors directly and in express terms that the firm existed, and that she was a member of it. 1 Lindley on Partnership, 42 (marginal). It is well settled that exemption laws do not apply to partnership property as against partnership debts. It is said that the law does not favor estoppels. It is proper, however, to observe that it abhors fraud. Some of the identical goods she got from her creditors are now being claimed by her as exempt from execution issued on a judgment for the purchase price. She has made no explanation whatever of any of the circumstances. The cases cited in the majority opinion

have no application to the facts under consideration. None of them arose upon sale of goods to a supposed firm. They are cases upon dower, ejectment, title to lands, etc., and different facts are stated than those here. They can serve no purpose in this connection other than to fill space.

The finding of this court that the traveling salesmen did not believe, when they sold the goods, that they were selling to a partnership, is a gross invasion of the province of the trial court, wholly unwarranted by any rule of law, and is directly against the evidence in the case. For these reasons, I think the reversal is wrong.