PHILIP P. ORRICK AND WIFE, Appellants, *v.* JOSIAH PRATT, ADM'R OF THOMAS J. ROBBINS, Respondent.

*Dower—Quarantine—Election.*—The widow electing to take a child's share, under the statute R. C. 1855, p. 670, § 11, is to be considered as doweress, and is entitled to her quarantine until her share of the estate be properly assigned to her. If the rents of the mansion-house of the deceased, or of the plantation thereto belonging, be collected by the administrator, the widow is entitled to demand the same up to the date of the assignment of the dower by partition. (R. C. 1855, p. 670, § 21, and R. C. 1855, p. 166, § 14.)

*Dower—Assignment—Partition.*—The setting off a child's share in partition to the widow is an assignment of dower.

*Dower—Messuage and Plantation.*—The widow is entitled to her quarantine of the whole of the farm or plantation upon which the mansion-house of the

deceased was situated. If part of the same have been rented by the husband to a tenant, she is entitled to a share of the rents equal to her proportion of the estate until the expiration of the tenant's term; from that time she is entitled to the whole rent until dower be assigned. (R. C. 1855, p. 672, § 21.)

*Appeal from St. Charles Probate Court.*

*T. W. Cunningham,* with *Lewis & Alexander,* for appellants.

I. Dower is defined to be, " the portion which a widow hath of the lands of her husband at his decease for the sustenance of herself and education of her children." (Toml. Law Dic. 578.) The " child's part" is, therefore, nothing more than a measure of quantity. The election to take it does not change the nature or origin of the title—does not metamorphose " dower" into " inheritance." It is assigned as dower, and derives no odor from the statute of descents and distributions. The words of the statute are conclusive of the question. The widow may " elect to be endowed ab-" solutely in a share of such lands equal to the share of a " child," &c. (R. C. 1855, p. 670, § 11.) It is difficult to perceive the basis of the first instruction given for the defendant, unless it be that the Legislature intended to provide for the widow a means of rejuvenation at their option.

II. The statute provides that, until dower be assigned, the widow may remain in and enjoy, &c. No condition appears as to the kind or quantity of dower, or whether with or without election of any sort. The privilege of election would be a mere snare for the unwary widow if she were thus to be deprived of the home and appurtenances which are unequivocally assured to her by a distinct and independent provision of law. (R. C. 1855, p. 672, § 21.)

*Quere*—If the widow " remain in and enjoy," &c., for a year or two previous to making any election, must she on such election pay over back rents ?

III. The expression " messuage or plantation thereto belonging" means at least the whole tract under cultivation belonging to deceased on which his mansion-house is situated. If there be only a " messuage," it means that; if there

be a "plantation," it means that just as clearly. (R. C. 1855, p. 672, § 21.) The right to "remain in and enjoy" implies the right to receive the profits for the time being. (1 Lomax on Real Prop. 91 ; Latham v. Latham, 3 Call. 181 ; Graham v. Graham, 6 Mon. 561 ; Chaplin v. Simmons, 7 Mon. 337, 338 ; Driskel v. Hanks, 18 B. Mon. 864, 865.)

*Coalter* and *Krekel*, for respondent.

I. The widow is entitled to dower under the statute R. C. 1855, p. 668, § 1, and, under the 21st section, to remain in the mansion-house of her husband, and the messuage or plantation thereto belonging, until dower be assigned, without being liable to pay rent for the same, unless she takes by election under the 11th section of the same act. Her right is absolute until divested by election.

II. The widow has no right to the possession under the claim of quarantine until dower is assigned of lands of which her husband was not seized in fact at the time of his death, and which were severed by lease in the actual possession of tenants detached and disconnected from the mansion, messuage or plantation.

III. That the widow, when she elects to take, in lieu of dower, a child's part in the lands of her deceased husband equal to the share of a child under the 11th section of the dower act, subject to the payment of debts, all her rights and claims under the 1st and 21st sections are extinguished by her election.

The widow retained the possession of the mansion-house and the messuage thereto belonging of her deceased husband from April, 1859, till March, 1862; and she never was deforced therefrom or required to pay rent for the same, and her possession was a continuation of the intestate's.

The sixty-six acres, alleged in the plaintiff's petition to be part of the plantation belonging to the mansion-house tract, were not in the actual possession of the intestate at the time of his death, but were severed therefrom by lease and in the possession of tenants; her claim of quarantine does

not extend to the ambit of the tract, as evidenced by title deeds, but only to the part enclosed by fence; and the term messuage is held to include a few acres adjoining the dwelling-house and peculiarly appropriate thereto. (Carey v. Buntain, 4 Bibb, 217; 1 Lomax, 91; Grayson & Wife v. Moncure, 1 Leigh, 449; Smith v. Smith, 13 Ala. 329; 5 Munf. 348; 4 Black. 334; 5 Black. 261.)

Under the 45th section of the 2d article concerning the administration of estates, "the administrator, under the direction of the court, shall lease the real estate for any term not more than three years, and the slaves for a period not more than one year at a time, and shall receive and recover such rents, hire and wages;" and, under the 14th section of article 6th of said act, "the court shall order such sum to be paid to her (the widow) out of the hire of slaves and the rent of real estate as shall be in proportion to her interest in the slaves and real estate." These are limited until dower shall be assigned, or otherwise, until she makes her election under the 11th section of the "Act concerning dower." Under this section, she elects to take a child's part of the real estate absolutely, subject to the charge of the debts of the intestate.

Whenever real estate is by statute made liable for the payment of debts of the deceased, there it constitutes legal assets, and as legal assets are such as come into the hands and power of the executor or administrator, or such as he is entrusted with by law, by virtue of his office, to dispose of in the course of administration; or, in other words, whatever an executor or administrator takes by virtue of his office, is to be considered as legal assets. Therefore, the rents were rightly incorporated into the funds of the estate and administered as assets. (1 Sto. Eq. § 51, 52; Williams on Exec'rs, § 1433; Zoller on Exec'rs, Ch. 8, p. 409.)

By the 4th section of the "Act concerning dower," the widow would be entitled to one-third of the rents and profits on the distribution of the personal estate. The instructions of the plaintiffs not being supported by the evidence were

lawfully refused.  (19 Mo. 408 ; 8 Mo. 707 ; 27 Mo. 26 ; 32 Mo. 411, 366 ; 33 Mo. 340.)

By the common law, dower is an inchoate title, and is created by the concurrence of marriage and seizen, and is consummated by the death of the husband, and this title is merely a chose in action to one-third part of the lands, during her natural life, whereof her husband was seized of an estate of inheritance at any time during the marriage to which she shall not have relinquished her right of dower in the manner prescribed by law ; and as an incident to dower the widow has the privilege, by law, to remain in the capital messuage or mansion-house, or other house whereof she is dowable, forty days after her husband's death : this right of quarantine being an incident of dower, was confirmed by Magna Charta, Ch. 7.  The 1st section of the " Act concerning dower" is an affirmative statute, discharged of debts ; and the 21st section of said act gives to the widow a personal privilege as an 'incident to dower.  To authorize the widow to claim the privilege to remain in the mansion-house and the messuage or plantation thereto belonging, she must have a title upon which to base her claim.  Now her title to dower may become extinguished under our statute : 1st, by the relinquishing her dower in the manner prescribed by law ; 2d, electing in lieu of dower to take an absolute estate in the lands of her deceased husband equal to the share of a child under the 11th section of the " Act concerning dower ;" 3d, by a devise accepted by her under the 15th section ; and 4th, by jointure under the 17th section.  Now, it is evident, that whatever and whenever the widow elects to take under any one of these sections, that which she takes is not dower, but a substitute for dower, and does not pass under the name of dower.  (1 Kentucky Digest, 518 ; Still v. Swan, Lit. Select Cases, 156.)  Then when she elects to take under the 11th section, she evinces her election by deed to take part of the land  charged with the debts of the intestate.  Dower the widow takes under title by law : a child's part is different in its character and tenure ; this she

takes by contract, an absolute fee simple, an acquisition of real estate by her own act or agreement. This 11th section being repugnant to the 1st and the 21st, being an adjunct of the 1st, they both cease to operate in her behalf by her own choice; she cannot claim the privilege held out to her in the 21st section, because she has nothing upon which to base her claim; she is not a doweress—her dower is extinguished by her own election, and she has no title upon which to base her claim under any statute; her dower is merged in the inheritance by release, and she is vested with a fee simple absolute, and holds her right by title purchased · in the real estate of the intestate as tenant in common with her three children, and the possession of any one of them is the possession of all.

Now, as regards her claim to the mansion-house and messuage, she is remitted to her right under the common law, which is the substratum of all other laws; its rules prevail unless repealed expressly or by necessary implication, and under which she may tarry in the mansion-house forty days, which is called her quarantine; after which she may be evicted by the heirs. (Co. Lit. 326; 1 Hill. on Real Estate, 141, 142; Seider v. Seider, 5 Whart. 208.) The widow cannot elect to take under one section and also claim the benefit of another repugnant to her election; she cannot claim under both. If this construction of the statutes be correct, then the court below committed no error in refusing the instructions asked by the plaintiffs, and in giving the instruction asked for by the defendant; and the court will not reverse the judgment given below unless it appears that error has been committed materially affecting the merits of the action. (32 Mo. 366; R. C. 300, § 34.)

Bates, Judge, delivered the opinion of the court.

Orrick's wife was the widow of Thomas J. Robbins, who died in April, 1859. At the time of the death of Robbins, he owned a tract of land in St. Charles county, and occupied a dwelling-house upon it, together with some land about

it, used for out-houses and stables, a garden, a meadow, and other lots. And adjoining this land, and on the same tract of land, was a field of sixty-six acres, which, at the time of Robbins' death, was rented out and in the actual possession of a tenant. After the death of Robbins, his widow continued to occupy the part of which he died actually possessed, without accounting to the estate for any rent therefor. Robbins died the owner of other lands also. The widow, under the eleventh section of the act concerning dower, elected to be endowed absolutely, in a share of her husband's lands equal to the share of a child, in lieu of dower of one-third part thereof for her life; and her share was assigned to her in partition, which partition was so made that the estate of Robbins should receive the rents until the first day of March, 1862, after which time the individual heirs were to receive the rents of the several parcels of land allotted to them respectively. The estate of Robbins received the rents of the sixty-six acres from the time of his death until the first day of March, 1862. The plaintiffs, Orrick and wife, (who was the widow of Robbins,) petitioned the St. Charles Probate Court for an order upon the administrator of the estate of Robbins, that he should pay them (in right of the wife) the rent received from said sixty-six acres up to the first day of March, 1862. The court refused their petition, and gave judgment against them, from which they appealed to this court.

1. The share of the estate of her deceased husband, which the widow elected to receive absolutely, (in lieu of one-third for life,) is to be regarded as dower; and until it was assigned to her she was entitled to remain in and enjoy the mansion-house of her husband, and the messuages or plantation thereto belonging, without being liable to pay any rent for the same. (Secs. 11 & 21 of the " Act concerning dower.")

2. If the administrator received the rent of the mansion-house and the messuages or plantation thereto belonging, or any part thereof, before the assignment of dower to the widow, the court should order such sum to be paid to her.

(Sec. 14, of Art. 6, of the "Act respecting executors and administrators.")

3. The partition in this case was equivalent to an assignment of dower.

4. As to what is meant by the words used in the statute, "messuages or plantation" belonging to the mansion-house. In Indiana, under a statute, which entitled the widow to continue in the mansion-house and messuage thereunto belonging until her dower was assigned, it was said, in the case of Grimes v. Wilson, 4 Black, 333, that "it is difficult to define with precision the signification of the legal term messuage. The best writers represent it as synonymous with house, and as embracing within its meaning an orchard, garden curtilage, adjoining buildings, and other appendages of a dwelling-house, but they limit the ground which may be appropriated to these purposes to a small quantity. The statute, by using the words mansion-house and messuage, cannot be supposed to have designed to give to the latter term a meaning entirely new and inconsistent with its usual sense; and though the act may have somewhat enlarged its import, so as to include a few acres of land (greater or less in extent, according to circumstances) adjacent to a dwelling-house and appropriated peculiarly to its use, it cannot be construed so as to make that term embrace a whole farm or plantation." In Virginia, where the widow was entitled, until dower was assigned, to continue in possession of the mansion-house and plantation belonging thereto, she was held to be entitled to the whole tract of land, including unenclosed woodlands. (Latham v. Latham, 3 Call. 181; Moore v. Gilliam, 5 Munf. 348.) In Kentucky, under a similar law, she was held entitled to the enclosed lands, but not to the unenclosed woodlands.

Our own statute, extending the widow's quarantine to the mansion-house and messuages, or plantation, may well be understood to mean that when the mansion-house was on a plantation she should have the whole plantation without restriction to the messuage; but when there is only a messuage

attached to the mansion-house, she should have only that. This appears to be the more reasonable when it is considered that so large a portion of the population of the State live upon and derive their support from plantations or farms, as they are more commonly called, which are generally small; and that, upon the death of the husband, the possession of the whole farm by the widow may be very often of great importance for the present support and comfort, not only of the widow herself, but also of the family, of which, by the death of her husband, she has become the head. And it is improbable that any great injury can happen to any other person by this construction of the statute, for any person having an interest in the land, or a creditor of the widow, may apply for assignment of the widow's dower, at any time after the husband's death, and thus terminate her quarantine. (Sec. 38 of the Dower Act.)

There remains only the question whether, if, at the death of the husband, a portion of the plantation be rented out and possessed by a tenant, the widow is entitled to the possession or receipt of rents of that part, and the question is not without difficulty.

On the one hand, it forms a portion of the plantation, to the whole of which she is entitled; and on the other hand, the statute, which confers his right, apparently supposes an actual possession in the husband, to which she succeeds, by providing that she shall remain in the mansion-house, &c. If there be distinct farms or plantations upon one tract of land, it is clear that the widow has her quarantine of that only which belonged to the capital mansion-house of her husband, that is, of the farm upon which was situated the house usually occupied by the husband immediately before the time of his death.

Again, there may be one farm composed of several distinct tracts of land, and it appears probable that in such a case the widow would be entitled to her quarantine of the whole.

If the owner of a plantation rent out a particular field, or part of it, that is not necessarily a separation of the field or

part from the plantation. Whether it be or not is a question of fact, for determination in each case. If it be not permanently separated, yet the widow's right being merely possessory, and she being unable to have actual possession during the term created by her husband, she cannot have her quarantine of such rented part until the term shall expire, and then her right would immediately attach. In this case, therefore, we think the widow's right, in the rents collected by the administrator, to be as follows : for the rents received for the unexpired term created by her husband, she was entitled only to a part thereof, in proportion to her general interest as doweress in the real estate ; and from the time of the expiration of the term created by her husband, at the time of the assignment of her dower, she was entitled to the whole rent.

Judgment reversed and cause remanded to the lower court for further proceedings, in accordance with this opinion. Judges Bay and Dryden concur.