AGAN *et al.* v. SHANNON *et al., Appellants.*

DIVISION ONE.

1. **Administrator's Deed:** DESCRIPTION OF LAND : PRESUMPTION. It will be presumed that the administrator committed a clerical error in inserting a wrong description of land in his report of sale and deed, where the description differs from that contained in the order of sale.

2. **Presumption.** Everyone is presumed by the law to perform his engagements and his duties.

3. **Administrator's Sale:** ORDER OF APPROVAL. A formal order of approval is not necessary to the validity of an administrator's sale.

4. **Administrator's Deed :** ACKNOWLEDGMENT : INCORRECT RECITAL. A certificate of acknowledgment of an administrator's deed, otherwise sufficient and signed by the probate judge, is valid though it is incorrectly recited in the body of the acknowledgment that F. ( the administrator ) was the probate judge. (*Overruling Lincoln v. Thompson*, 75 Mo. 623.)

5. ——: LAPSE OF TIME : PRESUMPTIONS. The courts, after great lapse of time, during which files may be lost or destroyed, will indulge very favorable presumptions to uphold judicial sales, and, in the absence of something of record showing the contrary, the presumption will arise from an order of sale by an administrator and a deed and approval of such sale, that all requisite antecedent steps were taken.

6. **Deeds:** REFERENCE IN ONE TO ANOTHER : RECORDING. Where one deed makes reference to another the two are to be considered as one and the deed so referred to need not be recorded.

7. **Administrator's Deed:** FALSE DESCRIPTION. Where an administrator's deed refers to the petition and order of sale and also contains a description of the land, which varies from that contained in the petition and order, the former description will yield to the latter as against the heirs of the decedent.

8. **Statute of Limitations:** HEIRS : DOWER. The running of the statute of limitations against the heirs of the decedent is not prevented by the fact that dower has never been assigned to the widow, where neither the widow nor some one claiming under her is in the possession of the premises.

Agan v. Shannon.

*Appeal from Barry Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*Joseph Cravens* for appellants.

(1) Legrand acquired the equitable title by the administrator's deed. *Valle v. Fleming,* 19 Mo. 454; s. c., 29 Mo. 152; *Jones v. Manly,* 58 Mo. 559; *Snyder v. Coleman,* 72 Mo. 568; *Long v. Mining Co.,* 68 Mo. 422; *Exendine v. Morris,* 76 Mo. 416; *Gilbert v. Cooksey,* 69 Mo. 42; *Henry v. McKerlie,* 78 Mo. 416. (2) The doctrine of equitable estoppel applies to the plaintiffs under the circumstances in this case as shown by the evidence. *Landrum v. Bank,* 63 Mo. 48; *Collins v. Rodgers,* 63 Mo. 515; *Johns v. Fenton,* 88 Mo. 64. (3) If plaintiff ever had a cause of action, it is barred by the statute of limitations. Miller died in February, 1855. Mrs. Miller and family abandoned the land before it was sold, went to Arkansas, and there she married Gibson in 1857, and never pretended to set up any claim to the land until 1883; and in April, 1858, she made a deed to Legrand for her interest in the land. This deed should have been admitted in evidence as a circumstance at least showing her abandonment even if not properly executed. Although she had dower adjudged her in this land, and this court has held in *Littleton v. Patterson,* 32 Mo. 357, and *Johns v. Fenton,* 88 Mo. 64, that the statute of limitations does not run against a widow until dower is assigned her, the contrary doctrine has recently been established in this state that dower is barred by ten years' adverse possession. *Robinson v. Ware,* 94 Mo. 768; *Beard v. Hale,* 95 Mo. 16. So the intervening dower estate of Mrs. Gibson did not prevent the heirs from bringing this suit since 1869, that being ten years after Legrand took

possession under his purchase.   Appellants contend that the judgment for dower in favor of Mrs. Gibson is not binding upon them and does not estop them from setting up the statute of limitations as a bar in this case. (4)   The question of quarantine cuts no figure in this case ; and the decisions of our courts holding that widows may maintain ejectment to recover possession of the mansion-house, etc., under section 2205, Revised Statutes, have no application here.   The record shows conclusively that the house where Miller lived and died was not on the land in dispute, but was on vacant land, hence he had no mansion-house within the meaning of the section cited , and the widow had no quarantine.

*N. Gibbs*, for respondents.

All the records of the administrator's sale, *i. e.*, the administrator's report of the sale, the court's approval of the sale, the administrator's deed, and the acknowledgment thereof in open court, spread upon the records of the court, and fully describing the land sold, were read in evidence by the appellants ; and. all these records recited the sale of two other and different forties than those on which the land in controversy is situated. The appellants then introduced witnesses and undertook to prove by oral testimony that the land sold was the land in controversy ; but all of those witnesses testified that they were not present at the sale and did not know what land was sold.   So the evidence introduced by the appellants themselves conclusively proved that the lands sold by the administrator did not contain the land in controversy.   The appellants had not acquired title to the land in controversy by adverse possession, because :   *First*.   The widow of Miller after his death, enjoyed the mansion house and plantation thereto belonging till after her marriage in December, 1857. *Second*.   Legrand, under whom appellants claim, did not go into the mansion house, or upon the plantation

till in 1858, which was after the widow had married, and she remained under the disability of coverture till in 1883, and her dower was not assigned till in 1884. *Third.* Said Legrand, on June 10, 1858, pretended to purchase from the widow of Miller, "all her right of dower" in the eighty acres on which the land in controversy is situated, and claimed he received from her a deed in writing therefor, and on June 12, 1858, he had said deed recorded on the deed records of said county, in book "E," at page 524, and ever thereafter claimed to own all her dower right in said eighty, and this deed (though informal as a conveyance of land) constitutes the only color of title to the land in controversy that Legrand and the appellants ever had. *Fourth.* The possession thus had and held by Legrand and those claiming under and through him ( *i. e.*, A. H. Brown, Joel Garner and appellants), was not adverse to the heirs till in 1884. *Fifth.* Their holding was under a claim of all of the widow's right, and her right was to enjoy the mansion house and all the plantation till her dower was assigned.

SHERWOOD, P. J.—I. Ejectment brought by the heirs of Miller for land once owned by their father, which was sold by Frazier, the administrator of his estate, as long ago as 1858, for the payment of debts.

The land inventoried, petitioned to be sold, ordered to be sold, and appraised under the order of the court, was the *only* land of which there is any mention made in the records of the probate court down to that point, was the southeast quarter of the northwest quarter, and the northeast quarter of the southwest quarter, section 25, township 25, range 29, designated on the subjoined plat as D 1, D 2.

But the administrator when he made report to the court of his sale to Legrand stated therein that he had sold the S. E. qr. of *S.* W. qr., and N. *W.* qr. of S. W. qr. of section 25, township 25, range 29, which land has been designated on said plat as M 1, M 2. In that report, however, he distinctly states that he made the sale "*in pursuance of an order of said court*" after having same appraised, etc. The only certificate of appraisement is the one already mentioned.

Beyond question the only land which the administrator *could lawfully* and *rightfully sell* to Legrand was that mentioned in the order and none other. No evidence, therefore, was necessary to prove that he sold the same land. Everyone, even a private individual is presumed by the law to perform his engagements and his duty. Here, the administrator was acting in a *quasi*-official capacity. *Lenox v. Harrison,* 88 Mo. 491, and cas. cit. It will consequently be *presumed* that the administrator made but a *clerical mistake* when he inserted the wrong numbers in his report and in his deed.

Looking at the abbreviated description of the land as contained in his report, it will be found that the mistake only consisted of but *two letters* which have been *italicised,* changing an *N* to an *S,* and changing an *E* to a *W.* And, unless we make the presumption aforesaid, we must conclude that the administrator sold the land which he had *not* been ordered to sell and which had *not* been appraised.

II.   And an examination of the record readily discloses that the sale *was* approved, though no formal order of approval was made to that effect.   The statute requires no such order.   It suffices if such approval be manifested in any one or more of a variety of ways inconsistent with the idea of *non-approval*.   Here, the deed was acknowledged before M. L. Wyrick, the presiding judge of the probate in open court, and in his final settlement the administrator accounts for the precise sum, $201, for which the real estate sold.

These facts and the further fact that though the estate was indebted, had not wherewithal to pay its debt, except by sale of its real estate, yet no resale was ordered, brings this case fully within the rule laid down in *Jones v. Manly*, 58 Mo. 559 ; *Grayson v. Weddle*, 63 Mo. 523.   The statute, Revised Statutes, 1855, section 34, page 147, provided that, if the report of sale was not approved by the court, the proceedings should *be void,* etc.; but that, if the report was approved, then the administrator should make a deed, etc.   Sec. 35.   So that the fact that the administrator executed and delivered a deed to the purchaser carries with it a presumption of previous approval of the sale by the court.   But what sale ?   The only rational answer to this question is the sale of *the land previously ordered to be sold.*

III.   The certificate of acknowledgment is as follows :

"STATE OF MISSOURI.    In the Probate Court of Barry
"County of Barry.    County, May 3, 1859.

"Be it remembered that W. L. H. Frazier, administrator *de bonis non* of the estate of Andrew J. Miller, deceased, this day personally came into open court and acknowledged the execution of the foregoing deed for the use and purposes therein contained, which acknowledgment is entered on the records of said court of said date.

"In testimony whereof I, *W. L. H. Frazier*, Judge of said court, have hereunto set my hand and affixing my private seal.

"[ Seal ] ( there being no seal of office yet provided ) at office in Cassville the day and the year above written.

"M. L. WYRICK,
"Probate Judge."

Under the ruling in *Lincoln v. Thompson*, 75 Mo. 623, this certificate of acknowledgment would be bad, because, though professedly made in open court and signed by M. L. Wyrick as presiding judge of the probate, yet it is stated therein that *W. L. H. Frazier* was such judge, and this would render the certificate *a nullity;* but that case *is not law*, and we overruled it on the point mentioned and hold the certificate *good.*

IV.   The deed of the administrator was duly put to record, and Legrand went into possession of the *right land* in 1858, and he and his family remained in possession up to some time during the war, when, his death occurring, they shortly afterward moved away, and remained away some four years, when they returned, and the land described by the *correct numbers* was sold at administrator's sale as that of Legrand, and a deed made to the purchaser, who, and those claiming under him, have been in continuous possession ever since, *i. e.*, from 1869 up to the time of bringing this ejectment, in 1886.   If the order to sell the land, made in 1858, and upon which Frazier, the administrator, acted, was not made at such a time that the publication necessarily precedent to that order could have been made, and the records of the probate court affirmatively show this, then of course neither legal nor equitable title passed by the sale.

In the present state of the record before us, it is difficult to tell just how this is.   It appears that Mrs. Miller, the widow of the decedent owner of the land in controversy, presented her petition as administratrix for the sale of the land, and an order for such sale was

made at the August term, 1857, of the probate court, but that no sale occurred. It seems then that at the November term, 1857, she presented her application for an "*order* of *publication*," and this was granted, and she was ordered to "*advertise as the law requires.*" If by this entry is meant a publication which is requisite to precede an order of sale, then it may well be that the order to sell was valid when made at the February term, 1858, directing the newly-appointed administrator *de bonis non* to sell the real estate in question. Such advertisement or publication at that time could have been made by posting up ten hand-bills twenty days, etc. R. S. 1855, sec. 25, p. 145.

If there is nothing in the probate records affirmatively showing the contrary, it will be presumed that the order of sale was made upon proper publication of notice. And, of course, notice by the administratrix of an intended application for an order of sale of the land could be used by her successor, Frazier. The order of sale *itself* is evidence of any fact which it is necessary to give the power to make it, and it is only where the record shows that it was impossible that the notice could have been given, that the order of sale would prove invalid. *Valle v. Fleming*, 19 Mo., *loc. cit.* 460.

After great lapse of time, during which files may be lost or destroyed, courts indulge very favorable presumptions to uphold judicial sales, and, in the absence of something of record showing the contrary, the presumption will arise from an order of sale and deed and approval of such sale that all requisite antecedent steps were taken. *Price v. Springfield, etc.*, 101 Mo. 107. Acting on the principles just stated we shall hold, until better advised, that the order of sale was made upon a proper basis. This is decisive of this case, if the description of the property in the deed can be made to tally with that in the order of sale, which is the point next for consideration.

V.   It is a familiar principle that, when one deed makes reference to another, the instrument to which reference is thus made becomes thereby *part and parcel of the former instrument.*   To all intents and purposes the two instruments become *one;* they become mutually incorporated into each other.   *Brownlee v. Arnold,* 60 Mo. 79; *Waples v. Jones,* 62 Mo. 440; *Noell v. Gaines,* 68 Mo. 649; *Lincoln v. Thompson,* 75 Mo., *loc. cit.* 637; 2 Smith Lead. Cases, 259; *Whittlesey v. Delaney,* 73 N. Y. 571.

Under the law, as it stood at the time the sale in question was made, there was no necessity for making in the administrator's deed a formal description of the land sold.   All that the deed need then do was to refer, "in apt and appropriate terms, to the order of sale, and the court by which it was made, the certificate of appraisement," etc.   R. S. 1855, sec. 35, p. 147; R. S. 1889, sec. 168.   And it has been ruled that a failure to designate the lands to be sold in the *order of sale* will work no hurt, if the petition praying for the sale of the land, and the appraisement set out the land correctly, and the order of sale refer to, and is based on, such petition and description.   *Adams v. Larrimore,* 51 Mo. 130.   The same rule holds as to the deed which consummates the sale made under the order and refers thereto, and to the certificate of appraisement.   *Id certum,* etc.   And when one deed makes reference to another deed or instrument the instrument referred to need not be recorded; thenceforth, it "has the same effect as if it had been inserted in the subsequent deed." Tiedeman, Real Prop., sec. 841.

Applying the principles already announced to the case in hand, we take the deed in question and lay it *side by side* with the petition for sale, the order of sale and the certificate of appraisement.   Doing this, we find that the deed corresponds with these instruments in every particular, except the *two* particulars already mentioned.   Now what is to be done?   Plainly this:

We must make the description contained in those instruments *control the deed.*

Doing this, treating the petition, order of sale and certificate of appraisement and deed as *one instrument*, it is lawful for us to apply the maxim *falsa demonstratio*, etc., and to reject as repugnant whatever in the deed does not correspond with the description contained in the instrument mentioned ; for, after such rejection, enough will be left to identify the property intended to be conveyed ; to harmonize the several instruments thus placed in juxtaposition ; and to enforce the deed under this construction.    Tiedeman, Real Prop., sec. 829.

Pursuing the course here indicated, there can be no doubt as to what land the deed was intended to convey, and *did* in contemplation of law convey, especially as against the heirs of Miller, who are mere *volunteers*, and who, regardless of the honest purchase and payment for the land in controversy by Legrand so many years ago, would now fain " reap where they have not sown and gather where they have not strewed."

We need not determine how we should rule this point were an innocent purchaser concerned ; but we do hold, that, as against these heirs who sit in the seat of their ancestor, the administrator's deed, so far as passing whatever title they may have had to the land in controversy, was, in its description, sufficient.

VI.    If the foregoing conclusions are correct, then it is unnecessary to examine further ; for, if the title passed by the administrator's deed to Legrand, then that is an end of the matter ; but, granting that the necessary precedent steps were not taken so as to have a valid order of sale, how is this concession to benefit the plaintiffs in view of the statute of limitations ?    On this point, on behalf of plaintiffs, the theory is urged that the widow's dower was *never assigned ;* that it makes no difference if the mansion house of Miller was not on the land in controversy, that she was entitled to remain in possession of the messuage, or plantation,

until assignment of dower should occur, and that, in consequence thereof, the statute did not run against the plaintiffs. On the authority of *Brown v. Brown*, 68 Mo. 388, it may well be conceded, that so far as concerns a widow's right to her quarantine, which includes the whole of the plantation, that the fact or accident of the location of the mansion house on an adjacent forty would not affect her quarantine right to the messuage, or plantation, situate on land which formerly belonged to her husband.

And, on the authority of several cases in this court (*Orrick v. Robbins*, 34 Mo. 226; *Brown v. Moore*, 74 Mo. 633; *Roberts v. Nelson*, 86 Mo. 21; *Holmes v. Kring*, 93 Mo. 452), the widow is entitled to quarantine in and to the *whole* of the plantation and its messuages and its rents until her dower is assigned to her, and that the statute of limitations does not run against the heir until such dower be assigned to her. But all the foregoing instances were ones where either the *widow* or her *grantee* were in *possession of the premises* in which the widow was entitled to her quarantine. In the case at bar, however, she had quit the premises in 1857. This being the case, there was nothing to prevent the operation of the statute against the heirs, because there was nothing to preclude them from bringing their action, for the reason that a widow's right to dower only becomes a *life-estate*, from the time her dower is set out to her. Tiedeman, Real Prop., sec. 115; 1 Woerner, Am. Law Admin., p. 254.

Holding these views, we reverse the judgment and remand the cause, with directions to the lower court to proceed in a manner not inconsistent with this opinion. All concur; Barclay, J., only in paragraph 6.

### SEPARATE OPINION.

Barclay, J.—My concurrence in the conclusion just announced by the learned Chief Justice rests upon the application of the statute of limitations to the facts disclosed.