GENTRY v. GENTRY *et al.*, *Administrators*, *Appellants*..

Division Two, May 24, 1894.

1. **Widow**: QUARANTINE: STATUTE.    A widow, until dower is assigned her, is entitled to quarantine rights in her husband's mansion house and plantation belonging to it and their incidents of rents and profits. (R. S. 1889, sec. 4533.)

2. ———: ———.    The fact that the mansion house is located on land· in which the husband had only a life estate does not affect the widow's right of quarantine in that part of the land owned by her· husband in fee.

3. ———: ———. A right of quarantine is not confined to contiguous lands, and especially is this true where the different parts have been used together and not as separate and independent holdings.

4. ———: ———: DOWER. The fact that the widow's possession of the mansion house farm is detrimental to the best interests of the estate does not affect her right to receive the rents until her dower is assigned.

5. ———: ———: ———. Section 250, Revised Statutes, 1889, providing that "until dower be assigned, the court shall order such sum to be paid to the widow out of the rents of the real estate as shall be in proportion to her interest in the real estate" does not apply where the widow is in possession under her quarantine rights.

6. ———: ———: MORTGAGE: INTEREST. A widow will not be required to keep up the interest on a mortgage on the mansion house plantation out of rents received by her therefrom while holding it under her right of quarantine.

7. ———: ———: RENTS: ESTOPPEL. A widow is not estopped to claim rent for the mansion house plantation till the assignment of her dower by the fact that she received from the executors, who carried on the farming operations, compensation for superintending the household affairs as to keeping and boarding hands.

8. ———: ———: DOWER: CONCURRENT ACTIONS. A widow may at the same time maintain an action against the executors for an accounting of the rents of the mansion house plantation, founded on her quarantine rights, and one for the assignment of her dower.

9. ———: PROBATE COURT, JURISDICTION OF. The probate court has jurisdiction of an action by a widow to compel the executors to account for the rents of the husband's mansion house plantation accruing before the assignment of dower. (R. S. 1889, sec. 3397.)

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

Plaintiff is the widow of William Gentry. During his lifetime he lived on and had his mansion house on the "blue land" at a point marked "X," as shown by the plat hereto annexed. For convenience of reference the lands have been colored on the plat in different colors, and designated as "blue land," and "yel-

low land." The latter, Gentry owned in fee; the former, he was possessed of as tenant by the curtesy, the same having been owned by a former wife, Ann, by whom he had several children, who was the sister of plaintiff, who was a widow when married to Gentry, and has a child by a former marriage.

The mansion house was situate on the place of residence known as "Oakdale," which embraced, not only the Ann Gentry land, but also the "yellow land" immediately adjoining, purchased and owned as before stated, by Gentry, who held all of the "yellow land" in fee and cultivated as one farm or plantation the land described in paragraph 1 of the petition. Distant from "Oakdale," and just one mile south of it, is tract number 1. One-fourth of a mile southwest of this, is tract number 2, and one-fourth of a mile still further west from 2, is tract number 3. All of the "yellow land," as shown on the plat, was included in paragraph 1 aforesaid.

On this "Oakdale" place Gentry had lived with his wife Ann many years, and by this marriage had a large family of children still living. The mansion house in which William Gentry lived with his family for many years preceding his death was on this part of the land in which he had only a life estate, while the orchard, garden, and most of the stables and other outbuildings belonging to said farm were on that part of the land which he owned in fee. After the death of Ann, Gentry married plaintiff, her sister, in 1874, and lived with her also in the former residence down to the time of his death, May 22, 1890.

On June 6, 1890, the defendants, J. C. Thompson and John R. Gentry, were, by the probate court of Pettis county, duly appointed administrators of his estate, and on June 9, 1890, said administrators pro-

cured from the probate court an order in words and figures as follows:

"And it is further ordered that the administrators be, and they are hereby, authorized and directed to continue the cultivation of all crops now planted upon the several farms belonging to the estate, and to harvest and to properly care for all wheat, corn and oats and meadow upon each and all of said farms, and for that purpose they are directed to use the stock and implements belonging to said estate, and also to expend such sums as may be necessary in feeding and caring for said stock and implements, and to employ such hands as may be necessary for the cultivation and preservation of said crops, and to expend such sums as may be necessary for the payment of wages and for boarding said hands."

Thereupon said administrators took possession of the land described in said petition which said Gentry owned in fee, and cultivated and harvested and used the grain crops then growing thereon, and they also used all the pastures and used all the hay that grew thereon in the season of 1890. In short, said administrators got and enjoyed all the benefits and full use of all said land from the death of said William Gentry, the farming operations being carried on as in Gentry's lifetime, without in anyway consulting the widow or recognizing in any way that she had any right in or to said land or any part thereof, until February 17, 1891, when, in contemplation of this suit, the parties hereto entered into a contract hereinafter set forth; but prior to February 17, 1891, to wit: On February 7, 1891, said administrators procured from the probate court an order directing them to rent all of the lands of the estate of said William Gentry. The contract of February 17, 1891, is as follows:

"This agreement made and entered into by and between Evelyn E. Gentry, widow of William Gentry, on the one side, and J. C. Thompson and John R. Gentry, administrators for the estate of said William Gentry, on the other, witnesseth:

"That, whereas there is a contention between the said Evelyn E. Gentry and said administrators concerning, *first*, her right to any quarantine, and, *second*, if she be so entitled, then as to the land affected thereby;

"And, whereas it is desirable for all parties to lease the land this spring, so that, no damage shall occur to anyone;

"Now, then, it is agreed as follows: *First*, that the administrators shall exercise full control over the lands belonging to the estate, and rent the same as best they can; *second*, that Evelyn E. Gentry binds herself to be satisfied with and abide by their action in the premises, and in the rents received; *third*, that she gives possession of the house and grounds adjoining, now occupied by her, by the first of March, 1891, so a tenant can be put into possession; *fourth*, that all questions as to the right of quarantine, the amount of land, if any, involved therein, and the share of rent belonging to Mrs. Gentry, if any, be and the same are left open without prejudice to either party; but either party, or anyone else interested may, in any court of competent jurisdiction, bring any suit or institute any proceeding to settle the above matters so left open, provided the adjudication shall apply only to rents so received, that either party may be so entitled to; and the said Evelyn Gentry limits her right to recovery, if any, to contribution from the administrators.

"This agreement only applies to rents hereafter, neither side making concession as to past rents, if any, nor as to any questions left open above.

"Witness our hands this seventeenth day of February, 1891.

"(Signed)   EVELYN E. GENTRY and GENTRY and THOMPSON, administrators."

In January, 1891, plaintiff brought suit for the assignment of her dower in all the lands of which her late husband died seized, which was in the ordinary form, and in which nothing was said about her right of quarantine.   This suit for dower was returnable to the May term, 1891, of the Pettis county circuit court.   At the October term, 1891, she dismissed said suit for dower as to all the lands covered by the $30,000 deed of trust mentioned in the abstract of the record.   On June 6, 1891, the plaintiff filed a petition herein in the probate court of Pettis county, which embraced all of the land in paragraph one of the petition marked down on the plat, being all of the "yellow lands" thus designated.   With the exception of the "blue lands," she prayed judgment against the administrators for the rents, and asked for an order that they be compelled to pay her the rents of the lands already received by them, and all that they should receive until her dower should be assigned.

The answer of defendants was the following:

"Come now the administrators aforesaid and for their answer in this behalf say that they deny every allegation in the complaint or petition filed in this cause.

"These administrators further answering say that they did not rent the lands of the estate of William Gentry, deceased, until the said lands were put into their charge upon the order of this court, made at its February term, 1891; prior to that time they received no rent for any of the land; and they further allege that there was no mansion house upon the lands of William Gentry, deceased, and that the plaintiff in this cause

did not reside, at the time of the death of said William Gentry, upon the lands of the said William Gentry, deceased, and that, therefore, no right of quarantine exists.

"They further allege that a large part of the land described in paragraph 1, was conveyed away by the plaintiff by a deed of trust to secure $30,000, which is now a subsisting lien, and on which there is a heavy interest charge, and they allege that the assets in their hands are not adequate to paying the same, and that it should be set off against and taken from the rents and profits, if any, and adjusted in this proceeding; and they further allege that there is now pending, and was at the time of bringing this [proceeding, a suit by the plaintiff to set off her dower in the land described, in , which she claims and seeks to recover the damages and rents and profits for one-third of the land from the death of the said William Gentry, which suit stands for trial and final determination in October, 1891."

The case being tried in the probate court, judgment in plaintiff's favor was rendered, substantially the same as that rendered in the circuit court. The case was appealed to the circuit court of Pettis county, where it was tried by the court at the October term, 1891. At the close of the evidence defendants asked leave to amend their answer to conform to the facts proved, by adding "paragraph B" to their answer as follows:

"The defendants further say that by and with the consent of, and acquiescence of the plaintiff they entered on the lands of William Gentry after their appointment as administrators of his estate and with her consent and acquiescence, and under the orders of the probate court of Pettis county, Missouri, undertook to and did complete the crops and care for and protect and raise the same then growing thereon, and to care for and feed the stock belonging to him at the

time of his death, and their possession was in no sense adverse to the plaintiff, and it was solely for the purposes above set forth up to the time of the contract pleaded in the petition herein, and that during all said time the plaintiff lived in the house where she lived at the time of the death of William Gentry, and used and enjoyed the lands exactly as she did prior to the death of William Gentry, and jointly with defendants, and no one interfered with any possession claimed by her at the time, and by agreement with the administrators, superintended the housekeeping and boarding for the hands carrying on the farming operations during the year 1890, and the housekeeping expenses for plaintiff and said hands, house services and a salary to plaintiff were paid by defendants out of the assets of said estate, and no claim was at any time during said period, made by her that she was entitled to the exclusive possession of said land.

"*c.* Wherefore defendants say that, having consented and agreed to and acquiesced in the necessary use of the lands for the purposes aforesaid, the plaintiff is now estopped to claim that the estate must pay her the rental value thereof up to the date of the contract pleaded in the petition, as if their possession was adverse to her and contrary to her rights and consent and acquiescence." Which amendment the court denied.

Certain declarations of law were then asked by defendants which were not passed upon at that term, but the court took the same under advisement until the next or January term, when the court refused to give such declarations, and responding to the request of defendants made the following special findings of facts in writing, to wit:

"The court, at the request of the defendants, states the conclusions of facts found by it in this case

as follows: The court finds all the facts alleged in plaintiff's petition to be true, except the allegation as to the rental value of the land in question, from the death of the said William Gentry until the seventeenth day of February, 1891. The court finds that said William Gentry died on the twenty-second day of May, 1890. The court also finds that the dower of the plaintiff as the widow of the said William Gentry, has not been assigned, and that the action brought by her to have her dower assigned is still pending. And the court finds that the plaintiff is entitled to the exclusive right to all the rents and profits of the land described in paragraph 1 of her petition herein, until such dower shall be assigned."

"The court further finds that there was a deed of trust on a part of said land described in said paragraph 1, and other lands made by the said William Gentry in his lifetime, in the execution whereof this plaintiff joined with her said husband. But as a conclusion of law the court finds that the plaintiff is entitled to rents and profits as aforesaid without reference to said deed of trust or to taxes on said land.

"And the court finds the rental value, from May 22, 1890, to February 17, 1891, of the land to which the plaintiff is entitled as aforesaid, is $1,800, and that plaintiff is entitled to six per cent. interest thereon from March 1, 1891, amounting to $96, making a total of $1,896 now due plaintiff from the defendants for the use of said land up to the date of the contract mentioned in the pleadings. And for the use of said land after the making of said contract, to wit: After February 17, 1891, the plaintiff is entitled to an accounting under said contract until the dower shall be assigned."

Thereupon the court rendered judgment against the defendants, reciting the special finding of facts

and adjudging that plaintiff as the widow of William Gentry is entitled to the exclusive right to all the rents and profits of the lands described in paragraph 1 of her petition until her dower shall be assigned. (Describing the land.) And further adjudging that the plaintiff have and recover from the administrators the sum of $1,896, together with her costs and that the same shall be paid out of the assets of said estate. And further ordering and adjudging that said Gentry and Thompson, administrators as aforesaid, should be, and they are hereby required and directed to account for, and pay over to the plaintiff all the rents of said land from and after the seventeenth day of February, 1891, until her dower shall be assigned, which they have received, or which they may hereafter receive, and that the probate court of this, Pettis county, be and is hereby directed to enforce this order.

NOTE.—In the plat the heavy shading represents the "blue lands;" light shade the "yellow lands."

*Sangree & Lamm* for appellants.

(1) The probate court had no jurisdiction to try this cause and render a judgment against the estate, and, hence, the circuit court on appeal acquired no jurisdiction, except to dismiss the case. It was, therefore, error for the court to refuse defendants' instructions number 1 and number 10. *Waller v. Mardus*, 29 Mo. 25; *Miller v. Tally*, 48 Mo. 503; *Jones v. Manley*, 58 Mo. 559; *Brown v. Moore*, 74 Mo. 633; *Church v. Robberson*, 71 Mo. 327; *Church v. McElhinney*, 61 Mo. 540; *Administrator v. Administrator*, 19 Mo. 647; *Powers v. Blakely's Administrator*, 16 Mo. 440; *Gordon v. Eans*, 97 Mo. 587; *Smith v. Gilmore*, 13 Mo. App. 155; *State ex. rel. v. County Court*, 38 Mo. 407. (2) There being no "mansion house" on the land of William Gentry which was occupied by plaintiff and said William Gentry, and they residing, as they did at the time of his death, on land that was not his, the right of quarantine did not exist in favor of plaintiff. The court, therefore, erred in refusing defendants' instruction number 2. *Holmes v. Kring*, 93 Mo. 452; *Robinson v. Ware*, 94 Mo. 678; *Collins v. Warren*, 29 Mo. 236; *Stokes v. McAllister*, 2 Mo. 163; *Milter v. Talley*, 48 Mo. 503; *McClung v. Turner*, 74 Mo. 45; *Brown v. Moore*, 74 Mo. 633; *Orrick v. Pratt*, 34 Mo. 226; *Wigley v. Beauchamp*, 51 Mo. 544; *Jones v. Manley*, 58 Mo. 559; R. S. 1889, section 4533; 2 Scribner on Dower [2 Ed.], chap. 3, pp. 53 to 69; 1 Woerner's Am. Law of Administration, section 116. (3) Even if the widow was entitled to quarantine, yet the administrators, representing the estate, were entitled to the crops planted and growing at the death of William Gentry. This right, necessarily, includes the possession of the land upon which they were growing, for crop-

ping purposes, and during the cropping time. Hence, it was error to allow evidence of the rental value of the land on which the crops were, and it was also error to refuse defendants' instructions numbers 4 and 5. R. S. 1889, secs. 100, 101, 106; *Whaley v. Whaley*, 51 Mo. 36; 2 Woerner's Am. Law of Administration, secs. 327, 514; 1 Washburn on Real Property [3 Ed.],* 105; *Singleton's Heirs v. Singleton's Executors*, 5 Dana, 87. (4) Even if plaintiff be entitled to quarantine, yet, having conveyed her dower in part of the alleged quarantine land, by joining with her husband in a deed of trust to secure $30,000 of borrowed money, and there not being assets in the hands of the administrators to pay the interest charges on the borrowed money, and the entire rents of the mortgaged land being insufficient to pay said charges, said rents, if any, should be appropriated in the first instance to the payment of interest for the joint protection of all concerned in the estate, including plaintiff. (5) Even if quarantine be allowed in the home place, of about one thousand acres, yet such claim can not, in addition, cover the detached and distant farm of eight hundred acres west of Sedalia. Hence the court erred in refusing defendants' instruction number 6. Land at a distance is not considered a part of the messuage or plantation. *Sharpley v. Jones*, 5 Harring. 373. Nor are outlying farms. *Strawn v. Strawn*, 50 Ill. 256. Even in one tract there might be distinct plantations. *Orrick v. Robbins*, 34 Mo. 226.

*B. G. Wilkerson* and *Jackson & Montgomery* for respondent.

(1) Until dower be assigned, the widow may remain in and enjoy the mansion house of her husband and the messuages or plantation thereto belonging,

without being liable to pay any rent for the same. R. S., sec. 4533. Until the widow's dower be assigned, the court shall order such sum to be paid to her out of the rents of real estate as shall be in proportion to her interest in the real estate. R. S., sec. 250. (2) The widow may rent the quarantine lands and retain the money received therefor. *Conger v. Atwood*, 28 Ohio St. 134; *Huey v. Huey*, 26 Iowa, 526; *Davenport v. Daveraux*, 45 Ark. 341; *Carnall v. Wilson*, 21 Ark. 92; *Craige v. Morris*, 25 N. J. Eq. 467; *Orrick v. Robbins*, 34 Mo. 226. (3) This right can only be terminated by the assignment of dower, and until that is done she is entitled to the whole of the rents. *Stokes v. McAllister*, 2 Mo. 163; *Orrick v. Robbins*, 34 Mo. 226; *Roberts v. Nelson*, 86 Mo. 21. (4) The fact that the mansion house was on land in which respondent's husband had only an estate for his lifetime, does not take away from her the right of quarantine in that part of the farm which he owned in fee. *Brown v. Brown*, 68 Mo. 388; *Agan v. Shannon*, 103 Mo. 661. (5) The fact that the land west of Sedalia did not join the lands northwest of Sedalia does not destroy the widow's right of quarantine in the lands west of Sedalia, as the court below found, as a question of fact, that these several tracts of land were used as and constituted but one farm. A farm may be composed of several detached parcels of land. For the purposes of quarantine, *Orrick v. Robbins*, 34 Mo. 239, 2 Scribner on Dower [2 Ed.], p. 61; for the purposes of homestead, *Perkins v. Quigley*, 62 Mo. 498. (6) A widow, until her dower is assigned, does not have to pay either taxes or interest on incumbrances on land in which she is entitled to quarantine. *Spinning v. Spinning*, 43 N. J. Eq., 215; *Graves v. Cochran*, 68 Mo. 74. (7) The court had jurisdiction of the subject matter and of the parties, and had authority to enter-

tain and determine the case, as it did. R. S., secs. 3397, 250. *Pearce v. Calhoun*, 59 Mo. 274; *Orrick v. Robbins*, 34 Mo. 226; *Brown v. Brown*, 68 Mo. 388. (8) There was no element of estoppel in the evidence in this case. Nor was there any proper allegation of estoppel in the original answer, nor in the proposed amendment thereto. The defendants did not rely upon anything that the plaintiff may have done, and were not influenced by anything she did or omitted to do. *Blodgett v. Perry*, 97 Mo. 272.

SHERWOOD, J.—I. Section 4533, Revised Statutes, 1889, provides that: "Until dower be assigned, the widow may remain in and enjoy the mansion house of her husband, and the messuages or plantation thereto belonging, without being liable to pay any rent for the same."

This, in substance, has long been the law, and as the section now stands it has stood for nearly sixty years. R. S. 1835, p. 229, sec. 15. Ever since the case of *Stokes v. McAllister*, 2 Mo. 163, the widow's right of quarantine coupled with the reception of the entire rents during the period mentioned in the statute, has been recognized. Ousted of her possessions, she may maintain ejectment against the intruder. *Stokes v. McAllister, supra; Miller v. Talley*, 48 Mo. 503. She may assign her right to her quarantine to another, who thereupon may successfully resist ejectment brought by the heir. *Jones v. Manly*, 58 Mo. 559.

Of course the widow's right to her quarantine and all its incidents of rents and profits is necessarily *exclusive;* it can neither be halved, quartered, nor in any manner subdivided. She is entitled to the whole rent as the result of being the undisputed possessor of the whole land. *Orrick v. Robbins' Adm'r*, 34 Mo. 226; *Roberts v. Nelson*, 86 Mo. 21.

II.  Nor does it matter that the mansion house was located on land in which Gentry. had only a life estate; this fact does not militate against a widow's right of quarantine in that portion of the land owned by the husband in fee.  In *Agan v. Shannon,* 103 Mo. 661, it was distinctly recognized as an undoubted legal principle that the fact of the accident of the location of the mansion house on an adjacent forty not belonging to the home tract, and to which the decedent had no title, would not in any way affect the quarantine right of the widow in the plantation which her husband owned; and in doing this we followed the ruling made in *Brown v. Brown's Adm'r,* 68 Mo. 388, where it was held that notwithstanding the dwelling house of the husband was on an adjacent eighty, and not on the remaining part which he owned in fee, this would not prevent the widow from successfully asserting her right to a homestead in the residue of the farm which her husband owned.  These rights of homestead, dower and quarantine are *cognate* rights; rulings which illustrate one class of classes may frequently give useful aid in determining what are the necessary belongings and concomitants of other and similar rights.  All such rights are bestowed by beneficent laws in order to afford support and shelter to the widow and the orphan; are remedial in their nature and objects and therefore should receive a liberal construction—one commensurate with the objects intended and in harmony with the ends to be attained.

III.  Pursuing this line of thought, let us examine the contention that a portion of the lands in which plaintiff claims quarantine were separate from the tract known as "Oakdale," where the mansion house was located, and therefore plaintiff has no right to quarantine in such detached portions.

The distance of the tracts marked 1, 2 and 3 from

the main tract, as disclosed by the markings on the plat, are not very considerable, and the court below on ample evidence found that all of the premises in question were cultivated by Gentry as *one farm;* by the same hands and with the same farming implements and work stock. The hands boarded and lodged at the mansion house; the work stock was kept at the stables near the house, and the same stock which was grazed and fed on one portion of the lands was fed on the others; and the inventory and appraisement show that the property on the land west of Sedalia, to wit, the tracts numbered 1, 2, and 3, and the land northwest of Sedalia, lying northwardly from those tracts, which included all the land in controvery, were included under the same heading in the inventory as the "Oakdale" property.

A right of quarantine is not confined to contiguous lands; the plantation lands on which it attaches itself, may be segregated; they need not be *en bloc.* In *Perkins v. Quigley,* 62 Mo. 498, it was ruled that in homestead lands *contiguity* was not an essential element, and no reason is perceived why the same rule should not prevail in instances like the present. In *Orrick v. Robbins' Adm'r,* 34 Mo. 226, this court has said that, in reference to the quarantine right, it may exist though the farm be composed of several distinct tracts of land. This statement, though not a direct ruling, we are inclined to follow, and particularly so, where, as here, the distinct portions have been used as a *unit* and not as separate and independent holdings.

IV.   If the continued possession by the widow of the whole plantation, or of a large portion thereof, and the reception of its rents and profits be regarded as detrimental to the best interests of the estate, or to those of heirs or creditors, etc., the remedy is one readily applied under the provisions of section 4546, Revised

Statues, 1889, whereby an executor, etc., heir, legatee, creditor, or other person interested etc., can apply for the admeasurement of the widow's dower.

V.   Something has been said in reference to section 250, Revised Statutes, 1889, which provides that: "Until the widow's dower be assigned, the court shall order such sum to be paid to her out of the rents of real estate as shall be in proportion to her interest in the real estate."   This section, however, we do not regard as applying to cases where the doweress is in under her quarantine right; but only to cases where she is out of possession altogether in consequence of there being no mansion house on the plantation or used in connection therewith, or where she is in possession of a portion only of her quarantine lands, the residue having been leased by her husband for a term of years, in which case she would be entitled under that section to her proportionate part of the rents during that term, and to the whole of them at its expiration.   But that section gives evident recognition to the rights of the widow, pending assignment of her dower, as being superior to the rights of creditors, as well as superior to the rights of minor children of the decedent, whose rights stand subordinated to those of creditors as shown by the preceding section.

VI.   It is contended on behalf of defendants, and this was the purport of one of the refused declarations of law asked on their part, that, as to the land on which there was a deed of trust in the nature of a mortgage, executed by Gentry in his lifetime, in which plaintiff joined relinquishing her dower, the executors from the rents and profits of such mortgaged lands should first apply a sufficient sum to keep down the interest on such lands, and pay the residue, if any, to plaintiff.

This declaration of law was properly rejected, because a widow in such circumstances has no title or

freehold estate in the land; she has but a "right" a "privilege," an interest temporary, evanescent and fugitive in its nature; akin to a tenancy at will; determinable at the option of the heir, executor, etc., as already seen, and therefore she is not liable for repairs, nor to keep down interest or to pay taxes on the mortgaged premises. Under a statute substantially identical with our own, the point in hand has been thus ruled in New Jersey. *Spinning v. Spinning*, 43 N. J. Eq. 215. See, also, *Graves v. Cochran*, 68 Mo. 74.

VII. Is plaintiff estopped to maintain this proceeding? Defendants claim she is. The testimony shows that plaintiff made no representations; neither gave her consent, nor was asked to do so, to anything the executors did. They pursued their own course; kept their own counsel, and were wholly uninfluenced by anything plaintiff did, and she did nothing, it seems, but pursue the same course as during her husband's life. The fact that, as was her custom living with her husband, she agreed with the executors to continue her superintendency over the household affairs as to keeping and boarding hands, who carried on the farming operations in 1890, and that she did this for a consideration paid by the executors, or the further fact that defendants paid the housekeeping expenses of plaintiff and such hands for that year, or that she used vegetables from the garden or apples from the orchard in the house keeping operations, or that she, as formerly, kept a horse, furnish not a *scintilla* of evidence tending to establish an estoppel. She was entitled, under section 105, Revised Statutes, 1889, to provisions, etc., on hand necessary for the subsistence of herself and family for a year, and her acceptance of a remuneration for her services could not have misled the executors; it was not so intended, nor did they rely on it.

In short, none of the constituent elements of an

estoppel *in pais* are to be found in plaintiff's conduct, to wit: "*First.* There must have been a false representation or a concealment of material facts. *Second.* The representation must have been made with knowledge, actual or virtual, of the facts. *Third.* The party to whom it was made must have been ignorant, actually and permissibly, of the truth of the matter. *Fourth.* It must have been made with the intention, actual or virtual, that the other party should act upon it. *Fifth.* The other party must have been induced to act upon it." Bigelow on Estoppel [5 Ed.], p. 570. See, also, *Blodgett v. Perry*, 97 Mo. 263, and cases cited. *Stagg v. Linnenfelser*, 59 Mo. 336.

Mere silence, acquiescence or even approbation do not of themselves, without more, necessarily operate as an estoppel. This point finds apt illustration in *Husted's Appeal*, 34 Conn. 488, where it was held that the widow was not estopped to claim full value of her dower by reason of the fact that the reversioner (her son with whom she lived) tore down the old dwelling and erected a new house with her approbation and for the more comfortable accommodation of his family, and of her as a member of it, and that she occupied it as a member of his family for several years before she applied to have her dower set out.

These remarks rule the point of estoppel against defendants, and also dispose of, in a similar way, the action of the court as to "paragraph B" of the amendment offered to defendant's answer.

The last clause of that pleading, for convenience, marked "*c*," was properly rejected, because there is no evidence to show that plaintiff consented or agreed to the use of the lands as used by defendants.

VIII. There is nothing in the point that plaintiff has a suit pending in the circuit court for the assignment of her dower. There is nothing inconsistent or

repugnant in the two suits. Until dower assigned by express statutory command the right of quarantine continued; but whatever rents, etc., would be received in the quarantine case would go to diminish rents and damages involved in the dower case; in which latter case, a plea *puis darrein continuance* may be interposed.

IX. The last point for consideration is the contention that the probate court had no jurisdiction of the subject-matter of this proceeding, and that, consequently, the circuit court acquired none. In *Orrick v. Robbins, Adm'r, supra,* a proceeding similar to the present one, instituted in the probate court, was sanctioned by not being questioned. The statute in this case, based as it is on a provision of the constitution of similar import (art. 6, sec. 34, const. R. S. 1889, sec. 3397,) declares of the probate court, that "said court shall have jurisdiction over all matters pertaining to probate business." This authorizes in the fullest manner the present proceeding.

The cattle, etc., belonging to the estate were fed and grazed on plaintiff's quarantine lands, becoming in this way more valuable, and so the proceeds of plaintiff's quarantine lands thus went, in 1890, to swell the *corpus* of the estate, and hence in all *fairness* the assets of that estate should be drawn upon to reimburse plaintiff for what has been improperly taken from her. And the like line of remark applies to what was received by defendants in 1891, from the land covered by the quarantine right. Finding no error in the record we affirm the judgment. All concur.