## O'CONNELL et al. v. GENTRY COUNTY BANK et al.
### No. 9190.

Circuit Court of Appeals, Eighth Circuit.
Jan. 25, 1932.

J. W. McKnight, of Albany, Mo., James M. Johnson, of Kansas City, Mo., and John J. Dwyer, of New York City, for appellants.

J. W. Sullinger, of King City, Mo., and R. E. Culver, Ben Phillip, and B. G. Voorhees, all of St. Joseph, Mo., for appellees.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree dissolving a temporary injunction and dismissing a bill which sought to enjoin an administratrix from taking further steps in the administration of certain assets belonging to the estate of an intestate; and to have said assets turned over to plaintiffs, alleged heirs of intestate. The parties will be designated as in the court below.

The main facts are substantially as follows: Appellants-plaintiffs are, except John J. Dwyer, residents of the Irish Free State and heirs of James O'Mara, who died intestate, a resident of Gentry county, Mo., on September 18, 1928. Dwyer is the attorney in fact of his coplaintiffs. O'Mara left neither wife nor descendants; the plaintiffs, except Dwyer, being collateral relatives. O'Mara left an estate in Gentry county consisting of farm lands, live stock, and other personal property thereon; and personal property consisting of bonds, stocks, etc., in the custody of the Gentry County Bank. The approximate value of the estate was $75,000.

At the time of his death, O'Mara was the administrator of the estate of his wife and was entitled to a one-half interest therein. The estate consisted of personal property largely in the custody of said bank, and amounted to about $12,630.

The appellee-defendant Essie Ward, public administratrix of Gentry county, learning of the death of O'Mara and being advised that certain of the personal property at the farm had been taken away, took possession of the personal property at the farm on September 21, 1928, and filed her declaration in the probate court; she was also appointed administratrix by said court on October 22, 1928, giving a bond of $75,000. On October 5, 1928, she was appointed administratrix de bonis non of the estate of Katie O'Mara, the deceased wife of James O'Mara. The administratrix so appointed proceeded to administer both estates. Claims were filed in the probate court against the estate of James O'Mara amounting to upwards of $1,000.

Prior to the appointment of Essie Ward as administratrix of the estate of James O'Mara, Dale Flowers, cashier of the Gentry County Bank, had at the request of some of the heirs of James O'Mara made application to be appointed administrator of the estate. The probate court had refused to make the appointment, but instead appointed the public administratrix. Thereafter, Flowers, as cashier of the Gentry County Bank, at the request of Dwyer, refused to deliver the assets of the James O'Mara estate to the administratrix. The heirs of James O'Mara were all nonresidents of Missouri, and disqualified from acting as administrator.

On October 30, 1928, the Gentry County Bank commenced a suit in the nature of an interpleader suit in the state circuit court of Gentry county, making the administratrix and the heirs of O'Mara defendants; and praying that it might bring into court the property in its hands belonging to the es-

tate of O'Mara and have an adjudication of the question, who was entitled to the possession of the property. After pleadings were filed, and on January 28, 1929, the action was dismissed by the plaintiff bank.

January 30, 1929, more than four months after the public administratrix had acted, appellants began the present suit in the Federal District Court at Kansas City. A temporary injunction was issued by the court restraining further proceedings by the administratrix. On the final hearing, the temporary injunction was dissolved and the bill dismissed. A supersedeas with the appeal has preserved the status quo.

Meanwhile, a partition suit has been brought in the state court for division of the real estate, that not being involved in the present suit; and the heirs have assumed to pay several claims existing against the estate. The heirs are all sui juris, and have made an agreement among themselves for distribution of the estate.

 Assuming that plaintiffs in the case at bar had a cause of action, it may be open to serious question whether they did not have an adequate remedy at law. That question, however, was not raised in the court below; nor is it raised here.

Had it been raised in the court below and decided in the affirmative, the result would have been, not a dismissal, but a transfer to the law side of the court (Equity Rule 22 [28 USCA § 723]; section 274a, Judicial Code [28 USCA § 397]), where the question would have been decided whether plaintiffs were entitled to the possession of the assets in question belonging to the estate without further probate proceedings.

All parties to the suit have treated it both in the trial court and in this court as a suit in equity. Under such circumstances, we are at liberty to treat it in the same way and determine the merits of the appeal. Twist v. Prairie Oil & Gas Co., 274 U. S. 684, 690, 692, 47 S. Ct. 755, 71 L. Ed. 1297; Self v. Prairie Oil & Gas Co., 28 F.(2d) 590 (C. C. A. 8); Curtiss Candy Co. v. Silberman (C. C. A.) 45 F.(2d) 451; Lyons Milling Co. v. Goffe & Carkener (C. C. A.) 46 F.(2d) 241, 245. We shall take that course.

The case is not one presenting a contest between parties, each seeking to be appointed by the probate court to administer the estate; nor is it a direct attack upon the legality of the appointment by the probate court of defendant, the public administratrix, to administer the estate.

 The real question on the merits is as to the necessity or propriety of further administration in the probate court touching the assets of the estate which are still in the possession of the Gentry County Bank. The trial court held that there was such necessity and propriety.

Among the statutory provisions of the state of Missouri governing the administration of estates is a provision for public administrators. Section 296, Revised Statutes of Missouri, 1929, provides for the election in each county of a public administrator. The duties of such public administrator are defined by section 299, which reads in part as follows:

"Sec. 299. *Duty of public administrator to take charge of estates, when.*—It shall be the duty of the public administrator to take into his charge and custody the estates of all deceased persons, and the person and estates of all minors, and the estates or person and estate of all insane persons in his county, in the following cases: First, when a stranger dies intestate in the county without relations, or dies leaving a will, and the executor named is absent, or fails to qualify; second, when persons die intestate without any known heirs; third, when persons unknown die or are found dead in the county; fourth, when money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers on the same; fifth, when any estate of any person who dies intestate therein, or elsewhere, is left in the county liable to be injured, wasted or lost, when said intestate does not leave a known husband, widow or heirs in this state; * * * ninth, where from any other good cause, said court shall order him to take possession of any estate to prevent its being injured, wasted, purloined or lost."

Such public administrator has the usual powers and is subject to the same duties as ordinary executors and administrators (section 300).

Section 302 provides: "It shall be the duty of every public administrator immediately upon taking charge of any estate, except those of which he shall have taken charge under the order of the probate court, for the purpose of administering the same, to file a notice of the fact in the office of the clerk of the probate court."

Section 305 provides: "The probate court may at any time, for good cause shown, order the public administrator to account for and deliver all money, property or papers

belonging to any estate in his hands to his successor in office, or to the heirs of said estate, or to any executor or administrator regularly appointed, as provided by law."

In the chapter providing for inheritance taxes, section 579 makes executors and administrators personally liable for such tax until paid.

The duties of ordinary administrators, which are also incumbent upon public administrators, include such matters as the making of an inventory, the collection of assets, the rendering of settlement accounts to the probate court; and, under certain conditions, by order of the probate court, distribution in part of the estate without waiting for final settlement and final distribution.

Considering the facts heretofore recited, together with the statutory provisions, it seems clear that the action of the public administratrix and her appointment by the probate court were fully justified. At the time of O'Mara's death there were creditors who had claims against O'Mara's estate. There was no heir or other relative in the county where he resided and died who was authorized to look after his estate. There were facts which led the public administratrix to believe that there was danger of loss to the estate or waste thereof. The size of the estate was such that it was certain that an inheritance tax would be levied. Furthermore, O'Mara had been, and at the time of his death was, administrator of his wife's estate, and at the time of his death had not fully administered thereon.

These facts, in our opinion, clearly showed a necessity for administration, and fully justified the appointment of the public administratrix; and the statute imposed upon her the duty of collecting the assets of the estate.

But it is contended by appellants that, "where an intestate leaves no debts or leaves debts of relative insignificance, the payment of which, after his death has been made or provided for by his distributees, and the distributees are all sui juris, and have provided by agreement for the distribution of the estate. * * * among themselves, the result of such settlement is to merge the legal and equitable estates in the distributees"; and that a court of general jurisdiction will enforce such distribution agreement; and that the further administration of the estate in the probate court should be ended and the administratrix restrained from collecting further assets of the estate.

In support of these contentions are cited numerous decisions from the courts of the state of Missouri, among them: Richardson v. Cole, 160 Mo. 372, 61 S. W. 182, 83 Am. St. Rep. 479; McCracken v. McCaslin, 50 Mo. App. 85.

In the Richardson Case, Lillie Fagin died intestate May 13, 1884, leaving personal property. There were no debts. Her heirs agreed upon a distribution of the estate. Twelve years later the public administrator brought suit to recover the estate. It was held such suit could not be maintained since its sole purpose was to collect fees for the public administrator and the probate court.

In the McCracken Case, a person had died intestate leaving property and heirs of legal age. There were no debts. The heirs agreed upon a distribution of the estate and this was carried out. Afterward the probate court directed the public administrator to take charge of the estate. It was held that there was no necessity for administration and that none should be granted.

The other cases cited follow in effect the same lines.

In none of the cases to which our attention has been called or which we have found has it been held, where facts exist at the time of the death of the intestate which make administration necessary and an administrator is appointed and administration is in progress, that the heirs can thereafter, by agreement of distribution and by providing for payment of debts, defeat the right of further administration and oust the probate court of its power to complete the administration of the estate. We do not think that the law contained in the statutes of Missouri or in the decisions of its courts contemplates such a course of procedure. On the contrary, the case of Green v. Tittman, 124 Mo. 372, 27 S. W. 391, is directly opposed to the theory of plaintiffs in the case at bar. The facts in the Green Case are thus stated by the court:

"The defendant, Tittman, being public administrator of the city of St. Louis in the year 1888, was ordered by the probate court to take charge of Mrs. Garrison's estate. The only asset of the estate consisted of the amount due Florence from her trustee, Branch, which at the time was somewhat over $20,000. The public administrator, after having taken charge of the estate pursuant to the order of the probate court, made demand upon the trustee for the payment of the amount aforesaid, and, payment not having been made in response to his demand, the

administrator brought an action in the circuit court of the city of St. Louis, upon the trustee's bond, against Branch, as principal, and Brown and plaintiff Green, as sureties. * * *

"This action on the bond, having been brought to trial, resulted in a judgment in favor of Tittman, as administrator, and against Green, for $21,200.36. From the judgment of the circuit court, Green took an appeal to this court, where the judgment was affirmed. * * *

"A mandate having been sent from this court to the circuit court, Mr. Green paid the court costs and called upon counsel for Mr. Tittman and paid them five-ninths of the judgment, which five-ninths then amounted to $13,613, but declined to pay the balance thereof, assigning as a reason that on or about December 30, 1885, shortly after Florence's death, Branch, the trustee, had paid Joseph W. Crookes, one of her brothers, more than the full amount of his distributive share of her estate, and that Edward Crookes, the other brother, had sold and assigned all of his interest in the estate to the firm of Mathews & Whitaker, and that, by subsequent conveyances, he, Green, had become the owner of that interest. The administrator claiming the right to collect the entire judgment, an execution was issued for the balance thereof, whereupon the plaintiff brought this proceeding to enjoin its collection. The circuit court entered a decree perpetually enjoining the collection of the balance of the judgment, and from this decree defendant appeals."

It was contended by appellee Green that as there were no debts, there was no need of further administration of the estate. The court in its opinion said (page 376 of 124 Mo., 27 S. W. 391, 392): " * * * it was the clear duty of the public administrator to do just as he did do, to wit, to proceed to recover judgment, and then to collect the residue of that judgment remaining after the first payment made thereon and the refusal of Green to pay the remainder. So that it will be seen that the public administrator was

simply moving in the line of strict duty when enjoined from further proceeding by the action of the circuit court. The order requiring him to take charge, as public administrator, of the estate of Florence Garrison, and his steps taken pursuant thereto, were but the natural sequences and legitimate results and incidents pertaining to the due performance of his duty; he would have been derelict to that duty had he done less." And further (page 378 of 124 Mo., 27 S. W. 391, 392): "The probate court had jurisdiction of the estate in question, indeed, 'over all matters pertaining to probate business; * * * settling the accounts of executors, administrators,' etc. Rev. St. 1889, § 3397; Gentry v. Gentry, 122 Mo. 202, 26 S. W. 1090. The estate in this particular instance had not yet been settled; the settlement was still pending before that court, the only appropriate tribunal where it could be settled. In such circumstances as are here presented, we do not believe that another tribunal could rightfully intervene and prevent the probate court from exercising its customary and lawful authority in the settlement of Mrs. Garrison's estate."

We approve this holding in the Green Case, and think it applicable to the case at bar.

The further contention in the case at bar that the order granting the motion for a temporary injunction was an adjudication on the merits of the case cannot be sustained.

The decision on the motion was an exercise of discretion and was not conclusive on the court on a subsequent hearing. 32 C. J. p. 373; Rodgers v. Pitt (C. C.) 129 F. 932; Sperry & Hutchinson Co. v. City of Tacoma (D. C.) 199 F. 853; Louisville & Nashville R. Co. v. Kentucky Railroad Commission (D. C.) 214 F. 465; J. L. Owens Co. v. Officer, 244 F. 47 (C. C. A. 8); Waterbury Buckle Co. v. G. E. Prentice Mfg. Co. (D. C.) 294 F. 930.

The decree of the trial court dissolving the temporary injunction and dismissing the bill was right, and it is affirmed.