### CUTLER et al. v. COOK.*
### No. 7454.

Circuit Court of Appeals, Ninth Circuit.

Aug. 5, 1935.

*Rehearing denied Oct. 21, 1935.

James G. Wilson and John F. Reilly, both of Portland, Or., for appellants.

Carey, Hart, Spencer & McCulloch and Fletcher Rockwood, all of Portland, Or., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Plaintiff recovered a judgment, or decree, against the defendants Asa B. Cutler, F. W. Cutler, and the Cutler Manufacturing Company, for the sum of $12,035.38, and costs, as damages for the breach of a contract between plaintiff and Asa B. Cutler and F. W. Cutler, dated May 4, 1928. The contract found to be breached by the defendants was an exclusive license agreement under certain patents issued to the plaintiff for his invention of a machine for the grading of fruit according to its size.

The decree provided that if the execution on the judgment was unsatisfied, then the property of the defendant Food Machinery Corporation which had been transferred to it by the other defendants should be subject to levy in satisfaction of the judgment. All the defendants appeal.

The controversy between the parties involves the interpretation of the contract by which the exclusive license was given, and particularly certain clauses thereof fixing the rights of the parties in the event that the licensees sold and transferred their manufacturing business. The manufacturing business of the appellants Cutler and Cutler Manufacturing Company having been sold March 29, 1930, to the appellant Food Manufacturing Corporation without the exclusive license under plaintiff's patents, and the plaintiff having failed to secure a satisfactory agreement from that company for the continuance of the manufacture of plaintiff's machine, the question arises as to the interpretation of clause 11 of the contract which was incorporated into the license agreement in anticipation of such a sale. That clause is as follows:

"Eleventh: If during the term of this contract the company shall sell its business, the second party shall have the option either to require that the purchaser from

the company shall assume and discharge all the company's obligations hereunder, or to cancel and terminate this agreement and put an end to all the company's rights hereunder and prevent any rights hereunder from passing to such purchaser from the company."

To an understanding of this clause, and clause 7 hereinafter quoted, it is essential that further facts be stated:

The patent was issued to plaintiff October 25, 1927, being No. 1,646,951; it was reissued December 4, 1928, as No. 17,149. Plaintiff began the manufacture of his patented fruit grader before May 4, 1928, the date of the exclusive license to Asa B. and F. W. Cutler. The plaintiff alleges in his bill that the Cutlers were his competitors in the business of manufacturing fruit graders and that he was induced to enter into the contract by certain false representations and promises set out in the bill, that such promises had been broken by the method in which the Cutlers had conducted their business, and by the sale thereof to the defendant Food Machinery Corporation. The court found that these charges were untrue and for that reason nothing further need be stated in reference to these allegations except to say that in the main the bill in equity of the plaintiff is based upon the claim of irreparable damage resulting from such alleged fraud. It is alleged that "the aforesaid acts and doings of the defendants, both severally and in combination and confederation with each other, as hereinbefore set forth, have caused and do now cause irreparable and continuing injury and damage to the plaintiff in the making and selling of his fruit graders and in the business arising out of and connected therewith * * * and the acts of the defendants as alleged have damaged and hurt plaintiff by causing the impairment and loss of the use and sale of his said invention, and the issues and profits rightly to be earned and paid under the terms of the agreement that defendants, as alleged, have failed to observe and keep." It is alleged that the plaintiff has no adequate remedy at law. The prayer of the plaintiff's bill seems to indicate a desire to have the license contract specifically enforced. He prays that the Cutler Manufacturing Company and the Food Machinery Corporation be found to be the assignees of the defendants Cutler and that each "is and has become bound by the provisions of the exclusive license agreement," and that each be enjoined from manufacturing any other fruit grader "except such grading machines as were being manufactured by the Cutlers on May 4, 1928." The bill does not claim damages for the breach of the contract of May 4, 1928, nor does it allege the amount of such damages; the nearest approach to a prayer for damages for the breach of duty by the appellants is as follows:

"That defendants be required to pay plaintiff for any and all damage suffered by plaintiff by the acts and doings of defendants in connection with the manufacture and sale of Cook Fruit Graders either as they claim under the exclusive license agreement, or contrary thereto or in violation of the provisions thereof, as alleged herein by plaintiff."

The case was tried before a master who construed clause 11 of the contract to give the plaintiff three options instead of the two expressly stated therein. We quote from his findings and opinion as follows:

"I construe clause 11 to mean that if the Cutlers sold their business Cook had the following options:

"a. To consent to the assignment to the purchaser on condition that the latter assumed all the obligations of the contract; and if the purchaser declined so to do Cook could,—

"b. Insist that the Cutlers continue to perform; or

"c. He could cancel and terminate the agreement."

The master concluded that under the second option "b" not mentioned in clause 11, but interpolated therein by construction, the plaintiff was entitled to $6,400 damages and that a decree should be entered for that amount against the Cutlers and the Cutler Manufacturing Company less an overpayment, $875.19. On exceptions taken to the court, the court sustained the master as to his finding of general damages in the sum of $5,000, but concluded that under clause 7 of the contract the appellant was entitled to an added sum of $7,035.38, being the difference between the $15,000 specified in clause 7 and the royalties theretofore paid to plaintiff amounting to $7,964.62, and ordered a decree for $12,035.38, the sum of the two items of $5,000 and $7,035.38. The seventh clause of the agreement is as follows:

"Seventh: In the event that the commissions for the year 1928 and royalties

accruing hereunder to October 1, 1931, do not equal or exceed the sum of $15,000.00, then the company on October 1, 1931, shall pay to the second party such sum as shall be necessary to bring the said total up to $15,000.00, provided that the company shall have the option to withhold payment of such deficit and cancel this contract by giving the second party notice in writing to that effect; and provided further that if the company shall not pay such deficit on or before October 1, 1931, then the second party shall have the right at his option to cancel this contract by giving 10 days' notice in writing to the company to that effect; and in the event this contract is so cancelled by either party as herein provided, then said second party shall have the right to manufacture and sell machines, equipment, devices, and attachments, described in said patent or reissue thereof, and all modification, alterations and improvements thereof without any claims in favor of the company therein or thereto, as fully as if this agreement had not been made."

■ The court thus assumed and followed as correct the conclusion of the master that the plaintiff had the option to sue for damages for an anticipatory breach of the contract and concluded that in measuring the damages the appellant was entitled to the whole sum of $15,000 provided in the contract, notwithstanding that the appellants Cutler had an option on October 1, 1931, to terminate the contract without payment of that amount. The primary question then is, Did the defendants breach the contract by a sale of their business to the Food Manufacturing Corporation without a sale or assignment of the license contract? In answering this question, it should be stated that the Cutlers were equipped with a large, well organized manufacturing plant and a going business for production and sale of much machinery and that plaintiff alleges this fact and appellants' threat to manufacture competing machines induced him to enter into the contract of May 4, 1928. Consequently, the sale of such manufacturing plant would necessarily affect the ability of the appellants to produce and sell the fruit grader patented by plaintiff. The contract recognizes that such a sale of the manufacturing business would materially affect both parties to the contract. For that reason, the subject is dealt with in the contract,

although it was otherwise irrelevant. Is it a fair construction of clause 11 of the contract that in case the Cutlers sold their general manufacturing business to a third party they must erect a new plant and continue to exploit the plaintiff's machine? Clearly the parties contemplated no such an extraordinary procedure in the event of such a sale. The conclusion of the master that appellants had a third unwrittten option to sue for damages for a breach of the contract in the event of such a sale is not justified by the terms of the contract or by the situation of the parties. Indeed, the plaintiff claimed no such right in his bill in equity. Therein he alleged in accordance with the express terms of the contract clause 11, as follows:

"XVI. That at the time the exclusive license was granted to F. W. Cutler and Asa B. Cutler and Cutler Manufacturing Co., partnership, it was agreed by the parties that if during the term of the license agreement the company should sell its business, plaintiff should have the option either to require that the purchaser from the company should assume and discharge all the company's obligations under the license agreement or to cancel and determine the agreement and put an end to all the company's rights thereunder and prevent any rights thereunder from passing to such purchaser from the company."

To exercise the first option in paragraph 11, the bill was framed in an attempt to hold the purchaser, the Food Machinery Corporation, to the terms of the contract without its consent. The difficulty in the case arose from a dispute between the Food Machinery Corporation and the plaintiff as to whether the latter would agree that it would manufacture no other fruit grader than that of plaintiff, or the one of the Cutlers which was being manufactured before May 4, 1928. To this the purchaser refused to agree as it already had a well-established business of manufacturing and selling a competing grader. Consequently, it also declined to accept an assignment of the contract of May 4, 1928. Upon ascertaining that the purchaser would not agree to assume the obligation of the contract of May 4, 1928, the Cutlers notified the plaintiff that they would not continue to manufacture such machines, qualifying the refusal by an offer of the purchaser to continue to manufacture plaintiff's machine at the plant for-

merly owned by the Cutlers and which was being operated by them after the sale as employees of the purchasers. The master and the trial court held that the contract was still in full force and effect notwithstanding the sale by the Cutler brothers of their manufacturing plant and business. The announced determination of Cutler brothers to cease manufacturing the plaintiff's machine was held to be an anticipatory breach of the contract justifying the recovery of damages therefor. This was an erroneous conclusion.

The contract of May 4, 1928, is predicated upon the manufacturing plant of the Cutlers and upon their facilities of distribution of their manufactured products. It was obvious to the parties when they entered into the contract that when these facilities were sold to a third person the Cutlers would be unable to carry out the contract in the manner contemplated by the parties at the time the contract was entered into. It was also known that neither Cook nor the Cutlers could control the action of the third party who purchased the business of the Cutlers. Consequently, the first option to the plaintiff contained in paragraph 11 in the event of such a sale was evidently intended to give him the right to negotiate a satisfactory arrangement for the continuance of the manufacture of plaintiff's machine by the purchasers of the business of the Cutler brothers. In the event he was able to make such an arrangement, the first option would have required Cutler brothers to transfer the license contract to the purchaser regardless of whether or not the Cutlers desired to continue to manufacture plaintiff's machine under the contract. The second option in paragraph 11 to the plaintiff permitted him to terminate the contract in case of such a sale of the Cutlers' business regardless of whether or not an arrangement could be made with the purchaser or of whether or not the Cutlers desired to continue under the contract. While it is true that the contract did not expressly give the Cutlers a right to terminate the contract in the case of the sale of their business, it is manifest from the contract and the circumstances surrounding it, and particularly from the provisions of paragraph 11 thereof, that a sale by the Cutlers of their business would prevent their performance of the contract, and, consequently, to enforce the contract under the circumstances would be directly contrary to the obvious intention of the parties. The decree for the plaintiff is erroneous.

In passing on this case, we have treated it as the parties have done, as a suit in equity. Compare, Inhabitants of City of Plainfield v. Palmer (C. C. A.) 72 F. (2d) 312; Gelinas v. Buffum (C. C. A.) 67 F.(2d) 380; Fidelity-Phenix Fire Ins. Co. v. Benedict Coal Corp. (C. C. A.) 64 F.(2d) 347; O'Connell v. Gentry County Bk. (C. C. A.) 55 F.(2d) 806; Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 244, 43 S. Ct. 118, 67 L. Ed. 232; Twist et al. v. Prairie Oil & Gas Co., 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297.

The decree is reversed with instructions to the trial court to enter a decree in favor of the defendants.